527 So.2d 1322 (1988)
Gary WILSON and Linda Washburn Wilson
v.
STATE DEPARTMENT OF HUMAN RESOURCES.
Civ. 6236.
Court of Civil Appeals of Alabama.
April 14, 1988.
Rehearing Denied May 11, 1988.
*1323 J. Kenneth Guin, Jr., of Laird and Wiley, Jasper, for appellants.
William Prendergast and Coleman Campbell, Asst. Attys. Gen., and Lynn Merrill, Sp. Asst. Atty. Gen., for appellee.
L. CHARLES WRIGHT, Retired Appellate Judge.
After a hearing, the Walker County Juvenile Court terminated the parental rights of Linda Washburn Wilson, Jimmy Hadaway, and Charles Pennington in Jennifer Marie Hadaway, a/k/a Jennifer Marie Pennington, age ten (Jennifer). The court also terminated the parental rights of Linda Washburn Wilson and Gary Wilson in Linda Diane Wilson, age seven (Diane), and Sherrie Ann Wilson, age five (Sherrie). The court placed permanent custody of the three children in the Alabama Department of Human Resources (DHR) so that they may be placed for adoption. The parents appeal from that judgment.
DHR became involved with this family in May 1981, when it obtained temporary custody of Jennifer and Diane as dependent children because their mother was unable to provide them with the basic necessities of life, causing them to be in danger of physical harm from malnutrition.
In June 1983, DHR petitioned to be relieved of custody. The court granted the petition and vested custody in the parents and ordered DHR to continue monitoring the situation. In June 1984, DHR petitioned for and received custody of Jennifer, Diane, and Sherrie. The petition alleged that Jennifer and Diane had been physically abused by the parents and that Sherrie was in such unfit surroundings as to endanger her health and welfare.
In early November 1984, physical custody of the children was returned to the parents with the understanding that if DHR found it necessary to pick up the children again, DHR would petition for permanent custody of the children and they would be placed for adoption. On November 19, 1984, DHR received another report of abuse and picked up the children.
In March 1986, a dispositional hearing was held, and the court ordered DHR to retain custody and to proceed with its plan to place the children for adoption. In May 1986, DHR filed a petition for permanent custody and termination of parental rights. A hearing was held in June 1987, and the court issued its order terminating the parental rights in August 1987.
The parents raise several issues dealing with evidentiary matters, in addition to their contention that termination of their parental rights was not the least drastic alternative and that there was insufficient evidence to support the court's order terminating their parental rights.
There is a two-prong test to be applied by the court when it considers whether to terminate an individual's parental rights. Brand v. Alabama Department of Pensions & Security, 479 So.2d 66 (Ala. Civ.App.1985); In the Matter of Burnett, 469 So.2d 627 (Ala.Civ.App.1985). First, there must be a finding of dependency by the court based upon clear and convincing legal evidence. Section 12-15-65(e), Code 1975. After it has been established that the child is dependent, the court must inquire *1324 as to whether all viable alternatives to termination have been considered. Brand, 479 So.2d 66; Burnett, 469 So.2d 627.
The record reveals that these children were found to be dependent in August 1984 and custody was vested in DHR. Physical custody of the children was returned to the parents for a short period of time in November 1984, while the parents were attending Parents Anonymous. DHR removed the children from the parents' home on November 19, 1984, based upon an anonymous report that Diane had been abused. The DHR social worker testified that she saw the bruise on Diane (a long, narrow bruise of one centimeter by four centimeters located on her right lower back area). Diane told her that her father had done it. The children were removed from the parents' home at that time.
The DHR social worker testified that in November 1984, DHR began making plans for permanent placement of these children and did not make any further attempts to work the children back into the home and that the parents have contacted DHR's office several times regarding visitation, but were allowed visitation (under supervision) with the children only three times between November 1984 and May 1986, when the petition to terminate parental rights was filed. There has been no visitation permitted since May 1986.
The DHR social worker testified that the home of Gerald and Martha Wilson, the paternal grandparents, had been investigated in August 1985, but the children were not placed with the paternal grandparents. DHR did not seriously consider the paternal grandparents' home as an alternative for placement. In fact, the witness stated that the decision for permanent placement had been made at the time the evaluation was conducted in August 1985. The paternal grandmother has died since the date of the home evaluation, but the paternal grandfather (who is sixty-five) continues to express a desire to adopt the children. The father stated at the hearing that he has two brothers and three sisters who are also willing to help with the children. There is no indication in the record that DHR has done any further evaluation of the Wilson home since August 1985 or has explored the possibility of placing the children with other family members.
In order to establish that termination of parental rights is the least drastic alternative, DHR should present evidence to the court of recent attempts to locate viable alternatives. Consequently, we must reverse the trial court's order terminating the parental rights of Gary and Linda Wilson, due to the fact that it was not established that all viable alternatives had been examined. Brand, 479 So.2d 66; Burnett, 469 So.2d 627.
The parents also raise several other issues regarding evidentiary matters which we feel compelled to comment upon. First, there was testimony by Mrs. Winsett, the homemaker who visited the Wilson home for a period of almost two years as part of a homemaker service provided to the Wilsons. Mrs. Winsett did not have her records with her in court and consulted a note that she had prepared that morning after obtaining the information from someone in the Birmingham office. While it appears that the use of the memorandum was present recollection revived, (see, C. Gamble, McElroy's Alabama Evidence § 116.01 (3d ed. 1977)), there was no verification that the copy that she was consulting had been compared to the original and was a correct transcription. C. Gamble, McElroy's Alabama Evidence § 116.02(8) (3d ed. 1977).
The parents also contend that the trial court erred when it allowed the DHR social worker to testify as to summaries of conversations between the mother and another DHR social worker when neither the records nor the other social worker were present in court. This would appear to be a textbook example of hearsay. C. Gamble, McElroy's Alabama Evidence § 242.01(1) (3d ed. 1977).
The parents also contend that the trial court erred when it conducted an in camera examination of Jennifer without waiver and consent of counsel. The Supreme Court has previously stated:

*1325 "We are aware that the practice exists among certain trial courts to conduct private conversations with minors in chambers with the consent of opposing counsel. In the absence of waiver or consent, however, the private interview by the trial court cannot be condoned. To sanction such a procedure would fly squarely in the face of the constitutional right of litigants to a public trial."
Ex parte Berryhill, 410 So.2d 416, 418 (Ala.1982) (emphasis added).
Our review of the record reveals that no objection was made at the time that the trial judge indicated that he would interview the children in his office in the presence of the court reporter. Although there was a record of the interview, the motion for new trial did not raise any objection to the in camera examination of the children without the presence of counsel. The trial court should not be placed in error on matters which the record reveals that it neither ruled upon nor was presented the opportunity to rule upon. Bevill v. Owen, 364 So.2d 1201 (Ala.1979); Defore v. Bourjois, Inc., 268 Ala. 228, 105 So.2d 846 (1958). Any allegations of improper procedure or of the absence of proper procedure must have been raised by timely objection or by a timely post-trial motion. Centers v. Jackson County Department of Pensions & Security, 472 So.2d 1069 (Ala.Civ.App. 1985).
The parents also contend that the trial court erred when it continued the in camera interview of Jennifer although she did not respond appropriately to qualifying questions. We have considered the record of the interview. The court determined Jennifer to be mildly retarded. We find no error in the acceptance of her testimony by the court, giving to it a probative value with her limitation in mind. C. Gamble, McElroy's Alabama Evidence § 94.01(2) (3d ed. 1977); Smith v. State, 380 So.2d 345 (Ala.Crim.App.1980).
For the error stated herein, this case is reversed and remanded.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and is hereby adopted as that of the court.
REVERSED AND REMANDED.
BRADLEY, P.J., and INGRAM, J., concur.
HOLMES, J., concurs specially.
HOLMES, Judge (concurring specially).
I agree with the result in this case. I do not think, however, that the conclusions reached regarding the evidentiary issues bear directly on the dispositive question.
The dispositive issue, in my opinion, is whether the trial court's decision to terminate parental rights is supported by the record.
I agree with the majority that DHR should have introduced evidence regarding recent attempts to locate viable alternatives to termination of parental rights. I would add that I have searched the record in vain for any evidence as to the current inability or unwillingness on the part of the parents to properly care for their children, or any evidence relating to the present condition of their home and lifestyle. Without such evidence, any findings of the court regarding the unlikelihood of such conditions changing in the foreseeable future are meaningless.
We have held that evidence of such current conditions or conduct relating to the parents' ability or willingness to care for their children is implicit in the requirement that termination of parental rights be based upon "clear and convincing" evidence. Hamilton v. State, 410 So.2d 64 (Ala.Civ.App.1982).
In short, I do not think that DHR has met the burden of proving its case as required by statute. See Ala.Code (1975), § 26-18-7 (1986 Repl.Vol.).
In agreeing with the result in this case, I do not want to be understood as agreeing with the conclusions regarding evidentiary matters.
*1326 That is, none of the evidence objected to relates dispositively to any present condition of the parents. Even with its admission, therefore, it would not be sufficient to support the trial court's judgment under either the majority's approach or my approach.