This case involves the termination of parental rights.
On April 25, 1989, the Jefferson County Department of Human Resources (Department) filed a petition to terminate the parental rights of R.K. (mother) to B.E.K. (child). The petition was modified, naming the putative father, A.L., and stating that his whereabouts were unknown. After an ore tenus proceeding, the trial court terminated all parental rights which the mother, the putative father, or any unknown father has in the child, and the custody and control of the child was committed to the Department for permanent placement or adoption. The mother appeals. We affirm.
We note that, although a parent has a prima facie right to custody of his or her child, clear and convincing evidence that termination is in the child's best interests can overcome that presumption. Muffoletto v. State Dept. of Human Resources,537 So.2d 939 (Ala.Civ.App. 1988). Furthermore, where termination is sought by a nonparent, a two-pronged test must be applied.Ex parte Beasley, 564 So.2d 950 (Ala. 1990). First, the trial court must find that the child is dependent, based upon clear and convincing legal evidence. The trial court must next determine that all viable alternatives to termination have been considered, Muffoletto, 537 So.2d 939; Wilson v. State Dept.of Human Resources, 527 So.2d 1322 (Ala.Civ.App. 1988), and rejected. Beasley, 564 So.2d 950.
The record reveals that the child was born on May 17, 1982, and that the Department first began to work with the child that year. At that time, the mother was in foster care and the child was first placed in protective custody. In 1983, custody of the child was granted to the maternal aunt, who retained custody until August 1987, when she returned the child to the care and custody of the Department. The child was returned to foster care and has remained there since. The testimony indicates that, during this time, contact with the mother by the Department was minimal due to difficulty in locating the mother or reaching her by telephone.
In February 1988, a service agreement was entered into between the mother and the Department. The Department agreed to assist the mother in corresponding with her child and to attempt to find a foster home closer to the mother. The mother agreed to attend the TASC program (drug screening and counseling), to write letters to the child, to maintain stable hours and employment, and to attend parenting skills classes. The evidence is undisputed that the mother did not attend the TASC program or the parenting skills classes. There was contradictory testimony as to the amount of time that the mother was employed, but the social worker's testimony indicated that several of the places where the mother claimed that she had worked did not verify the mother's employment. There was no evidence that the mother corresponded with the child, although the mother did testify that, during certain periods, she telephoned the child at the foster home.
The Department attempted to arrange visitation for the child with the mother, but these attempts were unsuccessful, as the mother either did not appear for the visitation or did not call the social worker to find out about the visitation arrangements as she was requested to do. The mother did *Page 468 
not have a phone so she could not be telephoned. The mother testified that she visited the child one time at the foster home and that she saw her twice at the courthouse (prior to hearings). The mother also stated that she had not contacted the child recently because of her own hospitalization in November 1989 and February 1990.
Testimony indicated that the mother had lived in the Collegeville Projects for three years, and the mother further testified that she did not feel that she lived in an appropriate place to raise a child.
The Department had attempted to locate other relatives of the mother, but was unable to determine from the mother or from the aunt how to reach them. The mother indicated that they were not a close family and that she did not have contact with most of her brothers and sisters and did not know how to reach some of them. No one had contacted the Department about taking the child, and the whereabouts of the putative father could not be ascertained.
The mother failed to attend the first hearing on the termination of parental rights, and upon motion by the mother, the trial court set aside its first order terminating parental rights, affording the mother a second opportunity to attend the termination hearing. The trial court's order from the second hearing held the following: That the whereabouts of the putative father cannot be ascertained; that the child is a dependent child under the age of eighteen and in need of care and protection; that the mother is unwilling to discharge her responsibilities and will not be able to do so in the foreseeable future; that the child has remained in foster care since August 1987; that the mother has failed to visit the child regularly, to attend drug and alcohol abuse screening and parenting classes, and has misrepresented her employment status; that there are no relative resources available for the child; and that the mother, putative father, and any unknown father are unable or unwilling to discharge their responsibilities to the child. The trial court then terminated all parental rights in or to the care and custody of the child and committed the child to the care and custody of the Department for permanent placement or adoption.
The mother first contends that there was no clear and convincing evidence and that there were no grounds to justify termination of her parental rights. She claims that the termination of her parental rights is contrary to public policy and against the best interests of the child and that the grounds listed in Ala. Code 1975, § 26-18-7, were not available as a basis for the decision.
However, we find that there was clear and convincing evidence to support the trial court's finding of dependency. Such a finding of dependency is necessary to a termination of parental rights when the State is a party. Muffoletto, 537 So.2d 939;Wilson, 527 So.2d 1322. Clearly, the child has not been in the custody of the mother since 1982 and has been in foster care for the last three years. In addition, this is not her first placement in a foster home.
As to the grounds enumerated for termination in Ala. Code 1975, § 26-18-7, we note that the court may consider the grounds listed in the statute but is not limited to those grounds. § -7(a). The evidence indicates that "the parents of the child are unable or unwilling to discharge their responsibilities to and for the child, . . . [and] that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future. . . ." § -7(a).
The evidence additionally shows that "reasonable efforts by the department of human resources . . . leading toward the rehabilitation of the parents have failed," § -7(a)(6), and that there was "failure by the parents to maintain consistent contact or communication with the child." § -7(b)(3). There also was a "lack of effort by the [mother] to adjust [her] circumstances to meet the needs of the child in accordance with agreements reached" with the Department. § -7(b)(4). Therefore, we find that there were grounds, under the *Page 469 
statute, to justify termination of parental rights.
Although the mother asks for more time to change her circumstances and partially blames her recent illnesses for the circumstances, we find that her disregard of the agreement with the Department and lack of effort in following up on the visitation efforts exerted by the Department in the years past are sufficient evidence of her inability to meet the needs of the child.
The mother next contends that there were viable alternatives to termination of parental rights and that the court erred in ordering termination. However, the Department was unable to find relative placement, and the mother presents no alternative other than the child's continuing to live in a foster home. This child deserves the opportunity to experience "stability and continuity" in her life, Ala. Code 1975, § 26-18-2, but we find that the conduct and condition of the mother do not indicate that she can provide this in the foreseeable future. Therefore, we find that there were no viable alternatives to termination.
Consequently, based on the above, we find that the decision of the trial court is due to be affirmed.
AFFIRMED.
INGRAM, P.J., and ROBERTSON, J., concur.