R.L.B. ("the mother") appeals from a judgment terminating her parental rights in her two children, M.B. ("the daughter") and J.B. ("the son").
The record indicates that the Morgan County Department of Human Resources ("DHR") filed a petition in May 1999 seeking to terminate the parental rights of the mother and M.D.C. ("the father") in both the daughter (born in May 1987) and the son (born in February 1989). The petition alleged that DHR had been involved in making reports, providing services, and foster-care placements with respect to the children since 1989; that temporary custody of the children had been awarded to DHR on three separate occasions since that time; that the children had been in DHR's temporary custody for 39 consecutive months preceding the filing of the petition. The petition also alleged that the mother had "demonstrated a recurring pattern of ongoing substance abuse/addiction from which she either [had failed or refused] to make a full recovery and which manifest[ed] itself at such times and in such fashions as to pose real and present risks of harm and/or exposure to danger" to the children. According to the petition, DHR had previously sought termination of the mother's and the father's parental rights, but termination had not been ordered; DHR averred that the mother had "resumed her pattern of partial compliance, substance abuse, and failure to successfully rehabilitate herself" after that proceeding had concluded. In response to the May 1999 petition, the mother sent a handwritten letter to the juvenile court requesting custody of the children, averring that she had entered an inpatient substance-abuse program, that she would be going to Alcoholics Anonymous (AA) meetings and church services regularly, and that she would be working as a housekeeping supervisor at a motel. The father did not appear.
After a two-day ore tenus proceeding in January 2000, the juvenile court entered a judgment finding that the children were dependent; that the mother and the father were unwilling or unable to provide for the proper supervision, care, and maintenance of the children; that the best interests of *Page 723 
the children would be served by their placement in the permanent custody of DHR; and that there was no viable alternative to termination of parental rights. Only the mother has appealed.
Rule 28(A)(1), Ala. R. Juv. P., provides that appeals from final judgments of juvenile courts shall be to the appropriate appellate court[1] in two instances: (1) when "a record certified as adequate by the juvenile court judge or a stipulation of facts is available and the right to a jury trial[2] has been exercised or waived by all parties thereto," and (2) when "the parties stipulate that only questions of law are involved and the juvenile court certifies the questions." Appeals from final judgments in all other cases, including those where there is not an adequate record under Rule 28(A)(1), "shall be to the circuit court for a trial de novo." Rule 28(B), Ala. R. Juv. P. Although the record in this case as originally transmitted did not contain a certification of adequacy by the juvenile-court judge, that certification has since been supplied.[3] We therefore proceed to the merits of the appeal.
We review the mother's appeal based upon the standards enunciated inH.M.W. v. Mobile County Department of Human Resources, 631 So.2d 1049,1050 (Ala.Civ.App. 1993) (emphasis added):
 "Initially, we recognize that every parent has a prima facie right to the custody of his or her child. L.G. v. State Department of Human Resources, 603 So.2d 1100
(Ala.Civ.App. 1992). This prima facie right can be overcome only by clear and convincing evidence that the child's best interests would be served by removing the child from the parent's custody. Id. It is the consideration for the best interests of the child that lies at the heart of every proceeding to terminate parental rights. L.G., supra.
 "The trial court is given the authority to terminate parental rights if it finds from clear and convincing evidence that the parents are unable or unwilling to discharge their responsibilities to and for the children. [Section] 26-18-7, Ala. Code 1975. The trial court shall consider whether the parents suffer from emotional illness, mental illness, or mental deficiency, whether the parents have abandoned their children, whether the parents have problems with drugs or alcohol, and whether reasonable efforts to rehabilitate the parents have failed. [Section] 26-18-7(a), Ala. Code 1975. If the children are not in the physical custody of their parent or parents, the trial court shall also consider such circumstances as whether the parents have provided material needs for the children, whether the parents have maintained regular, scheduled visits with the children, and whether the parents have adjusted their circumstances to meet the needs of the children according to agreements reached administratively or judicially. *Page 724 
[Section] 26-18-7(b), Ala. Code 1975.
 "In this case, DHR petitioned to terminate the parental rights. In such cases as this, where a nonparent is the petitioner, the trial court's determination is governed by the application of a two-pronged test. Ex parte Beasley, 564 So.2d 950
(Ala. 1990). First, the trial court must conclude from clear and convincing evidence that the child is dependent. Id. Second, the court must consider and reject all other viable alternatives to termination of parental rights, so that it can conclude that the termination is in the child's best interests. Beasley, supra. Additionally, the trial court's determination on these matters is presumed correct on appeal, and we will not reverse absent a determination that the judgment of the trial court is . . . unsupported by the evidence [so] as to be plainly and palpably wrong. L.G., supra."
The mother generally contends that termination was not in the best interests of the children and that clear and convincing evidence warranting termination was not presented; the argument section of her brief as to those contentions essentially amounts to a summary of testimony favorable to her concerning her progress in treating her alcoholism and a criticism of a DHR caseworker's opinions concerning why termination would be in the children's best interests. However, under the applicable standard of review, the juvenile court's determination that termination of the mother's parental rights was in the best interests of the children is presumed correct, and will not be reversed unless it is unsupported by the evidence so as to be plainly and palpably wrong.H.M.W., 631 So.2d at 1050.
The record is replete with evidence that the mother's conduct "is such as to render [her] unable to properly care for the child" and that her conduct "is unlikely to change in the foreseeable future" (§26-18-7(a), Ala. Code 1975). According to medical records admitted into evidence, the mother has had problems with alcohol abuse since at least 1989 requiring treatment; the juvenile court's August 5, 1998, judgment on DHR's previous termination petition, which was entered after three days of testimony in open court, noted that although that court had declined to terminate parental rights at that time, it had expressed that "[i]t is the expectation of this Court that . . . the mother will continue to do those things necessary to regain legal and physical custody of [the] children," which included maintaining sobriety.[4]
During 1999, however, the mother was under almost constant treatment for alcoholism, both inpatient and outpatient, and there was evidence that she had refused a recommended placement in a "halfway house." In February 1999, she was found lying outside a pub by a police officer; the mother stipulated that she had "relapsed" on that occasion. On August 14, 1999, the mother and her paramour, S.T., were arrested for disorderly conduct after a loud altercation; at that time, both the mother and S.T. had been consuming alcohol, and the mother had a can of beer in her hand. On October 22, 1999, the mother and S.T. were again involved in a public altercation, and were again arrested for drunkenness; at that time, the mother's speech was slurred, her balance was unsteady, and she smelled of alcohol. At *Page 725 
trial, the daughter testified that she felt upset that the mother was still consuming alcohol, despite the mother's denials of continued drinking; the daughter testified that the mother was drinking because she was generally in the company of S.T., who she said "drank all the time." Although the mother denied that she and S.T. were still in a relationship, she admitted that S.T. would occasionally stay with her for two-or three-day periods, and there was evidence that S.T.'s automobile had been seen at the mother's mobile home during the month before the January 2000 hearing.
Under § 26-18-7(a)(2), Ala. Code 1975, excessive use of alcohol of such duration or nature as to render a parent unable to care for the needs of the child is a factor that the juvenile court must consider in determining whether that parent is unable or unwilling to discharge his or her responsibilities to and for a child. There was sufficient evidence presented to the juvenile court from which that court could conclude that the mother's alcohol abuse was not susceptible to treatment, and that her association with S.T., a "playmate" who would facilitate her alcohol abuse, would likely cause her abuse to recur for the foreseeable future. The juvenile court could have concluded that despite the mother's participation in treatment programs during 1999, she was not making significant progress towards reunion with the daughter and the son, who have been in and out of foster care for the past eight years, and for four consecutive years at the time of the January 2000 proceeding, out of their brief lives of 14 and 12 years, respectively. Our statement inD.G. v. State Department of Human Resources, 569 So.2d 400, 403
(Ala.Civ.App. 1990), is apropos: "At some point it becomes necessary to say that the children require a more permanent placement."
Having failed to demonstrate error with respect to the dependency prong, the mother argues that a viable alternative to termination existed and was erroneously rejected by the juvenile court; she claims that the children could be placed in a therapeutic foster home in Morgan County, closer to the mother. However, that argument necessarily concedes that "[t]he only less drastic alternative [to termination] available was to maintain the children in foster care until, perhaps, the mother could rehabilitate herself sufficiently to become a fit mother." S.B. v. StateDep't of Human Resources, 743 So.2d 470, 472 (Ala.Civ.App. 1999). Retaining the child in foster care is not a "viable alternative" to termination. See R.K. v. State Dep't of Human Resources, 577 So.2d 466,469 (Ala.Civ.App. 1990) (affirming termination of parental rights in and to a child where DHR was unable to find a placement for the child with a relative, and parent presented no other alternative than the child's remaining in a foster home); see also D.P. v. State Dep't of HumanResources, 571 So.2d 1140, 1142 (Ala.Civ.App. 1990) (affirming termination of parental rights where parent offered no alternatives other than continued placement in a foster home or return to home where she resided). Thus, we reject the mother's contention that the juvenile court should have extended the children's extended stay in foster care in lieu of terminating her parental rights.
Based upon the foregoing facts and authorities, we conclude that the juvenile court did not err in terminating the mother's parental rights in and to the daughter and the son. Its judgment is due to be affirmed. *Page 726 
AFFIRMED.*
All the judges concur.
* Note from the reporter of decisions: The Court of Civil Appeals has issued an opinion in this case dated September 8, 2000, and on December 15, 2000, had issued another opinion on application for rehearing. On May 1, 2001, acting ex mero motu, the court withdrew its opinions of September 8, 2000, and December 15, 2000, and recalled its certificate of judgment in this case. Also, on May 1, 2001, the court reinstated the case.
[1] The "appropriate appellate court" in juvenile cases is generally this court, except where the underlying judgment is an adjudication of delinquency or a ruling on a motion to transfer a child to an adult court for criminal prosecution. See Rule 28(A)(2), Ala. R. Juv. P.
[2] Pursuant to § 26-18-4, Ala. Code 1975, proceedings concerning termination of parental rights are "governed by Title 12, Chapter 15, Article 3" of the Code of Alabama. Section 12-15-65(a), a portion of that article, provides that hearings "shall be conducted by the court without a jury."
[3] The act of certification may be performed after the record has been transmitted to an appellate court. See W.R.C. v. State,681 So.2d 1100 (Ala.Crim.App. 1995),
[4] We note that the same juvenile court judge heard both of DHR's petitions, and that in entering its January 2000 judgment, the juvenile court was "not required to ignore or attempt to forget the past" (Clarkv. State Dep't of Human Resources, 523 So.2d 131, 132 (Ala.Civ.App. 1988)).