890 So.2d 114 (2004)
Ex parte STATE DEPARTMENT OF HUMAN RESOURCES.
(In re Y.M.
v.
Jefferson County Department of Human Resources).
1020739.
Supreme Court of Alabama.
April 16, 2004.
*115 William H. Pryor, Jr., atty. gen., and J. Coleman Campbell, deputy atty. gen., and Lynn S. Merrill, asst. atty. gen., Department of Human Resources, for petitioner.
Joe W. Morgan III, Birmingham, for respondent.
PER CURIAM.
Three of Y.M.'s children were removed from her custody, were adjudicated dependent, and were placed in the custody of the Jefferson County Department of Human Resources ("DHR"). Subsequently, DHR petitioned to terminate Y.M.'s parental rights. The trial court conducted a hearing on DHR's petition on February 28, 2002. At the hearing the trial court admitted testimony and took judicial notice of the contents of the entire court file relating to each child.[1] The trial court then terminated Y.M.'s parental rights.
Y.M. appealed to the Court of Civil Appeals. The Court of Civil Appeals reversed the judgment of the trial court and remanded the case for further proceedings. Y.M. v. Jefferson County Dep't of Human Res., 890 So.2d 103 (Ala.Civ.App.2003). In a plurality opinion, the Court of Civil Appeals held that "when a juvenile court hears evidence on a petition to terminate parental rights, it is conducting an adjudication, not making a disposition, and hearsay is `not competent in a hearing on the [termination-of-parental-rights] petition.' § 12-15-65(h)[, Ala.Code 1975]." 890 So.2d at 112.
DHR filed a petition for a writ of certiorari with this Court. We granted the petition to determine whether the Court of Civil Appeals erred in holding that a termination-of-parental-rights hearing is an "adjudicatory hearing" at which hearsay is inadmissible and in finding that the trial *116 court erred in taking judicial notice of the entire court file.

I.

Whether a termination-of-parental-rights hearing is an adjudicatory proceeding at which hearsay evidence is inadmissible.
In A.W.G. v. Jefferson County Department of Human Resources, 861 So.2d 400 (Ala.Civ.App.2003), a case released after Y.M., the Court of Civil Appeals explained its holding in Y.M. as follows: "The main opinion in Y.M. carefully reviewed the provisions of Ala.Code 1975, § 12-15-65(f) and (h), as well as § 12-15-71(a), and concluded `that a parental-rights-termination hearing is an adjudicatory proceeding at which hearsay evidence, which is permitted by § 12-15-65(h) in a dispositional proceeding, is inadmissible.'" 861 So.2d at 406.
We have reviewed the applicable statutory law and case-law, and we agree with the Court of Civil Appeals that a hearing at which the court considers the termination of parental rights is an adjudicatory proceeding. See Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); § 12-15-65(f) and (h), Ala.Code 1975; and § 12-15-71(a), Ala.Code 1975. In Santosky, the United States Supreme Court examined the procedure in the State of New York for terminating parental rights. The Court noted that the State of New York bifurcates its proceeding into a fact-finding phase and a dispositional phase. 455 U.S. at 748, 102 S.Ct. 1388. In the fact-finding phase, the trial court must determine that the child has been "permanently neglected." During this phase the State of New York must prove that the natural parents are at fault and that they are clearly unfit to raise their own children. Indeed, the natural parents and the State of New York are adversaries. 455 U.S. at 759-60, 102 S.Ct. 1388. If the trial court finds the parents unfit, then the trial court enters the dispositional phase, at which it decides what placement would be in the best interest of the child. 455 U.S. at 760, 102 S.Ct. 1388.
Similar to the statutory scheme established by the New York Legislature, our Legislature has established a bifurcated process by which parental rights are terminated. During the adjudicatory or fact-finding phase, the trial court determines "from clear and convincing evidence, competent, material, and relevant in nature, that the parents are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct is unlikely to change in the foreseeable future." § 26-18-7(a), Ala.Code 1975. The Alabama Court of Civil Appeals in In re Colbert, 474 So.2d 1143 (Ala.Civ.App.1985), and its progeny set out the following test to be applied when the State petitions for the termination of parental rights:
"[T]he court must apply what is essentially a two-prong test. First, the court must find from clear and convincing evidence that the child is dependent. § 12-15-65(e), Code of Alabama 1975. See § 26-18-7(a), Code of Alabama 1975; Brown v. Alabama Department of Pensions and Security, [473 So.2d 533 (Ala.Civ.App.1985)]. Once dependency is found, our court has stated that the trial court must determine whether less drastic measures than termination of parental rights would best serve the interest of the child. See Glover v. Alabama Department of Pensions and Security, 401 So.2d 786 (Ala.Civ.App.1981); Miller v. Alabama Department of Pensions and Security, 374 So.2d 1370 (Ala.Civ.App.1979)." *117 474 So.2d at 1145. See Ex parte Beasley, 564 So.2d 950 (Ala.1990)(establishing that trial court must find that grounds for termination exist and that all viable alternatives to the termination of parental rights have been considered before it can terminate a parent's rights). See also A.W.G., supra; S.B.L. v. Cleburne County Dep't of Human Res., 881 So.2d 1029 (Ala.Civ.App.2003); and H.M.W. v. Mobile County Dep't of Human Res., 631 So.2d 1049 (Ala.Civ.App.1993). The court in In re Colbert further held that only after the trial court has found that grounds for terminating parental rights exist and that there is no viable alternative to the termination of parental rights can the court terminate the parental rights. After the trial court enters its order terminating the parent's rights, it is authorized pursuant to § 12-15-65(f), Ala.Code 1975, to make proper disposition of the case, pursuant to § 26-18-8, Ala.Code 1975.[2] The order of the trial court terminating a parent's rights to her child once affirmed on appeal is permanent. State Dep't of Human Res. v. Thomas, 554 So.2d 1063 (Ala.Civ.App.1989)(holding that Child Protection Act provides for permanent placement and permanent custody of child once parental rights have been terminated).
Because of the finality of a trial court's determination to terminate a parent's rights, the proceeding in the trial court is clearly an adjudicatory proceeding. Therefore, we agree with the Court of Civil Appeals that a proceeding to terminate a parent's rights pursuant to § 26-18-7, Ala.Code 1975, is an adjudication.
We further recognize, as did the Court of Civil Appeals, that only competent, material, and relevant evidence may be admitted during an adjudicatory proceeding to terminate a parent's rights. See § 12-15-65(f) and § 26-18-7(a), Ala.Code 1975. Additionally, we acknowledge, as did the Court of Civil Appeals, that hearsay evidence is not considered competent evidence in an adjudicatory proceeding, unless it falls within one of the exceptions provided by the Alabama Rules of Evidence, other rules adopted by this Court, or by statute.[3] Rule 802, Ala. R. Evid. Hearsay evidence is admissible at an adjudicatory hearing if it falls within one of the exceptions provided in Rules 803 and 804, Ala. R. Evid. For example, Rule 803(6), Ala. R. Evid., provides that records of regularly conducted activity are not excluded by the hearsay rule. See L.A.C. v. State Dep't of Human Res., [Ms. 2020794, October 24, 2003] ___ So.2d ___ *118 (Ala.Civ.App.2003)(analyzing a report prepared by employee of a hospital intervention program to determine if it was admissible as a business record pursuant to Rule 803(6), Ala. R. Evid.). Thus, hearsay evidence is admissible at a termination-of-parental-rights proceeding only if it falls within one of the exceptions recognized in Rule 802, 803, or 804, Ala. R. Evid.

II.

Whether a trial court can take judicial notice of the entire court file during a termination-of-parental-rights hearing.
A judge may take judicial notice of his own court's records. Lyle v. Eddy, 481 So.2d 395, 397 (Ala.Civ.App.1985). The Court of Civil Appeals held, however, that "`[w]holesale judicial notice of all matters occurring prior to the unfitness hearing is unnecessary and inappropriate, and a trial court should only take notice of those portions of the underlying court files that have been proffered by the State and to which the respondent is given an opportunity to object.'" Y.M., 890 So.2d at 113, quoting In re J.P., 316 Ill.App.3d 652, 663, 737 N.E.2d 364, 372, 249 Ill.Dec. 974, 982 (2000). The Court of Civil Appeals has further recognized that "a trial court may take judicial notice of its own prior orders in a pending case. See 2 Charles W. Gamble, McElroy's Alabama Evidence § 484.02(2) (5th ed.1996); Richardson v. Richardson, 531 So.2d 1241 (Ala.Civ.App.1988)." A.W.G., 861 So.2d at 406.
In this case, the trial court could take judicial notice of the contents of the court files to the extent it considered previous court orders, evidence admissible under an exception to the hearsay rule, and testimony and evidence admitted at any previous adjudicatory proceedings such as when the children were determined to be dependent. See, e.g., Simmons v. Dep't of Human Res., 500 So.2d 1146 (Ala.Civ.App.1986)(adjudicatory proceeding at which child was determined to be dependent); Dale County Dep't of Pensions & Sec. v. Robles, 368 So.2d 39, 42 (1979)(adjudicatory proceeding at which child was determined to be dependent). Cf. In re Adkins, 298 N.W.2d 273, 277 (Iowa 1980)(recognizing that a court at a termination-of-parental-rights hearing may take judicial notice of the underlying prior adjudication because the prior proceeding and the termination proceeding are not separate, but are "interdependent and interwoven").
Therefore, we agree with the Court of Civil Appeals that the trial court erred in taking judicial notice of the entire contents of the court files. While it was proper for the trial court to take judicial notice of portions of the court files, the trial court could not consider hearsay evidence contained in the files unless it was admitted pursuant to an exception recognized in Rule 802, 803, or 804, Ala. R. Evid.
The Court of Civil Appeals conducted a harmless-error review and concluded that the trial court's error in admitting hearsay evidence was not harmless. Rule 45, Ala. R.App. P. DHR has not sought certiorari review of that conclusion, and, in fact, makes no harmless-error argument in its petition or in its briefs to this Court. Therefore, the proper scope of certiorari review does not allow us to review the conclusion by the Court of Civil Appeals that the trial court's error in admitting hearsay evidence contained in the court files was not harmless. See Powell v. State, 485 So.2d 379, 381 (Ala.1986) ("Because the State failed to include in its petition for certiorari a request for review of this second ground, we pretermit any consideration of its validity."); Benefield v. State, 282 Ala. 19, 19, 208 So.2d 455, 456 (1968) ("We have said that on certiorari to the Court of Appeals, this court will consider *119 only questions which are treated in the opinion of that court which are challenged in the petition for the writ of certiorari and which are argued in brief filed in support of the petition. Liberty Mutual Ins. Co. v. Manasco, 271 Ala. 124, 123 So.2d 527 [(1960)]; Harris v. State, 272 Ala. 146, 130 So.2d 231 [(1961)]; Ex parte Thaggard, 276 Ala. 117, 159 So.2d 820 [(1964)]; City of Gadsden v. Elrod, 250 Ala. 148, 33 So.2d 270 [(1948)].").
The judgment of the Court of Civil Appeals is affirmed.
AFFIRMED.
HOUSTON, SEE, LYONS, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur.
BROWN and STUART, JJ., concur in part and dissent in part.
STUART, Justice (concurring in part and dissenting in part).
I agree with the majority that a termination-of-parental-rights proceeding is an adjudication and, consequently, that hearsay evidence, unless it falls within one of the exceptions in Rule 802, 803, or 804, Ala. R. Evid., is not admissible. Additionally, I agree with the majority that the trial court can take judicial notice of the contents of the court files to the extent it considers previous court orders, evidence admissible under an exception to the hearsay rule, and testimony and evidence admitted at any previous adjudicatory proceedings. I, however, dissent from the majority's refusal to conduct a harmless-error analysis regarding the sufficiency of the evidence, without consideration of the improperly admitted hearsay evidence, to support the trial court's judgment. Because the paramount objective of child protection is to promote the welfare of the child by providing the child with stability and continuity and because the admission of the improper evidence here was harmless, I believe this Court should have conducted a harmless-error analysis to determine if the error "probably injuriously affected the substantial rights of the parties." Rule 45, Ala. R.App. P.
Section 26-18-2, Ala.Code 1975, admonishes the trial court that termination-of-parental-rights proceedings must be conducted "in such a manner as to protect the welfare of children by providing stability and continuity in their lives." Additionally, it provides that an appeal from such a proceeding takes precedence over "all other cases in the court to which the appeal is taken." Furthermore, our caselaw has consistently held that the cardinal consideration in a termination-of-parental-rights proceeding is the best interest of the child. See, e.g., Ex parte F.P., 857 So.2d 125 (Ala.2003).
Applying these tenets to the case before us, I believe that this Court had a duty to conduct a harmless-error analysis. The Court of Civil Appeals found that the improper admission of the hearsay evidence was not harmless. When this Court reviews the judgment of the Court of Civil Appeals, it reviews the entire record, and, within the parameters of Rule 45, Ala. R.App. P., it has the authority to consider whether the error, if any, is harmless, regardless of whether harmless error is argued by the parties. In this case, it is in the best interest of the children that this Court conduct a harmless-error review of the sufficiency of the evidence: the admission of the improper evidence was harmless; consequently, such an analysis would promote the children's welfare and stability.
In B.D.S. v. Calhoun County Department of Human Resources, 881 So.2d 1042, 1056 (Ala.Civ.App.2003), the Court of Civil Appeals held that even if the trial court erred by admitting improper evidence, *120 the court would not reverse the trial court's judgment on appeal "`unless ..., after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.' Rule 45, Ala. R.App. P." See also Gentry v. State Dep't of Pensions & Sec., 462 So.2d 929 (Ala.Civ.App.1984)(holding harmless the admission of alleged hearsay evidence in a termination-of-parental-rights case in light of clear and convincing evidence of neglect by parent). In this case, the trial court's order is supported by clear and convincing, competent evidence indicating that the children were dependent and that no viable alternative to terminating Y.M.'s parental rights existed. See Ex parte Beasley, 564 So.2d 950 (Ala.1990).
The Court of Civil Appeals has stated that the trial court may consider the grounds listed in § 26-18-7, Ala.Code 1975, but it is not limited to those grounds. R.K. v. State Dep't of Human Res., 577 So.2d 466, 468 (Ala.Civ.App.1990). Moreover,
"[a] child may be declared dependent pursuant to Ala.Code (1975), § 12-15-1(10)(m), if he `for any other cause is in need of the care and protection of the state.' We have held that this proposition gives the juvenile court the authority to determine a child to be dependent under the totality of the circumstances. Carter v. Jefferson County Department of Pensions and Security, 496 So.2d 66 (Ala.Civ.App.1986). The primary concern in cases such as this one is always the best interest of the child. In the Matter of Stacks, 406 So.2d 979 (Ala.Civ.App.1981)."
Martin v. State Dep't of Human Res., 502 So.2d 769, 771 (Ala.Civ.App.1987). See also M.M.S. v. D.W., 735 So.2d 1230, 1232 (Ala.Civ.App.1999)(holding that "the juvenile court can find a child dependent based upon grounds not asserted in the dependency petition"). Regarding the inquiry as to whether a viable alternative to the termination of parental rights exists, the State must present evidence that it has investigated and cannot find a viable alternative to the termination of parental rights; the burden of proof then shifts to the parent to establish a viable alternative to termination. R.K., 577 So.2d at 469; D.P. v. State Dep't of Human Res., 571 So.2d 1140 (Ala.Civ.App.1990). The trial court can terminate a parent's rights if it is established by clear and convincing evidence that the termination of parental rights is in the best interest of the child. State Dep't of Human Res. v. A.K., 851 So.2d 1, 8 (Ala.Civ.App.2002). See § 26-18-2, Ala.Code 1975 (providing that the purpose of the Child Protection Act is "to protect the welfare of children by providing stability and continuity in their lives, and at the same time to protect the rights of their parents"). Indeed, termination-of-parental-rights proceedings are not conducted in a vacuum, and the cardinal consideration in determining whether to terminate a parent's rights is the best interest of the child. Moreover, an appellate court will not reverse a trial court's decision to terminate a parent's rights unless that decision is so unsupported by the evidence as to be plainly and palpably wrong. Ex parte State Dep't of Human Res., 624 So.2d 589, 593 (Ala.1993).
Here, the record contains ample, independent, competent, and clear and convincing evidence that supports the trial court's judgment that the termination of Y.M.'s parental rights was in the best interest of the children.
The trial court's orders terminating Y.M.'s parental rights stated that the court had heard duly sworn testimony from Catherine Denard, a social worker for the Jefferson County Department of Human *121 Resources, and from Y.M., the mother. The court, recognizing that it had held K.H. and A.H., two of Y.M.'s children, dependent on November 18, 1999, and D.M., a third child, dependent on February 4, 2002, found from clear and convincing evidence, competent, material, and relevant in nature, that the children were dependent pursuant to § 12-15-1(10), Ala.Code 1975. Additionally, the court found that Y.M. had failed to provide for the material needs of the children, had failed to regularly visit the children, had failed to maintain consistent contact or communication with the children, and had voluntarily and intentionally abandoned the children. The court further found Y.M. "unable to discharge [her] responsibilities to and for the child[ren]" and found that her "conduct and condition" was unlikely to change in the foreseeable future. Lastly, the court found that "there [were] no suitable relative resources willing to receive custody of the child[ren]." Based on these findings, the trial court terminated Y.M.'s parental rights.
A review of the record indicates that the trial court's finding that the children were dependent is supported by clear and convincing evidence. The record contains the properly admitted orders of the trial court finding K.H., A.H., and D.M. dependent pursuant to § 12-15-1(10), Ala.Code 1975. Moreover, those orders indicate that Y.M. stipulated that K.H. and A.H. were dependent. The record unequivocally establishes that DHR has been providing for the needs of K.H. and A.H. for more than two years and for D.M. since shortly after his birth. Therefore, the evidence supports this finding by the trial court.
The record also contains competent and clear and convincing evidence to support the court's findings that Y.M. failed to maintain regular visits with the children, failed to maintain consistent contact or communication with the children, and had voluntarily and intentionally abandoned the children. At trial, Catherine Denard, the DHR supervisor on this case since November 2000, testified for DHR. Denard testified that since DHR had filed its petition to terminate Y.M.'s parental rights to A.H. and K.H. in December 2000, and to D.M. in January 2002, Y.M. had not visited consistently with the children during the scheduled visitations. Denard testified that while Y.M. did attend some of the one-hour visits between January and July 2001, she was frequently late and a couple of times visited with the children for 30 minutes or less. Denard further testified that despite the fact that DHR had provided Y.M. with bus passes, Y.M. frequently informed DHR that she was unable to find transportation to the visitations. Denard testified that Y.M. had had no contact with the children from July 17, 2001, until February 13, 2002  almost a seven-month period. According to Denard, during this period Y.M. did not communicate with her and Denard had no contact with Y.M., except during the February 4, 2002, court hearing at which D.M. was found to be dependent. After that hearing, Denard set up four visits on February 6, 13, 20, and 26 for Y.M. to visit with her children. Y.M. missed her February 6 visit.
Moreover, Y.M. admitted that she had not visited with her children from July 31, 2001, until February 2002. She maintained that her neglect was excusable because she had been evicted from her apartment, "was trying to find [her] a new place to stay and get on [her] feet again and a job," and did not have transportation to the meetings; however, those circumstances do not negate the fact that she did not regularly visit and communicate with her children. Applying the established law to the evidence set out above, I would conclude that the record provides clear and convincing evidence supporting the trial *122 court's findings that Y.M. failed to maintain regular visits with her children, see § 26-18-7(b)(2), Ala.Code 1975; failed to maintain consistent contact or communication with her children, see § 26-18-7(b)(3), Ala.Code 1975; and had voluntarily and intentionally abandoned the children, see § 26-18-7(a)(1), Ala.Code 1975, and R.K. v. R.J., 843 So.2d 774 (Ala.Civ.App.2002) (concluding that a father who did not have custody of his child had nonetheless abandoned the child by failing to fulfill his parental role to the extent circumstances allowed). Furthermore, this evidence also established that Y.M. did not provide for the material needs of the children for at least a seven-month period, see § 26-18-7(b)(1), Ala.Code 1975.
The trial court's determination that no other viable alternative to termination of Y.M.'s parental rights existed is also supported by clear and convincing evidence. Denard testified that she had investigated the relatives Y.M. and R.H., the children's father, had provided as possible candidates for custody of the children, but that none of the suggested individuals was acceptable. Y.M. did not offer any additional suitable alternatives or establish that a less drastic alternative than termination of her parental rights existed. Moreover, it is quite obvious from the record that DHR tried to work with Y.M. to develop less drastic measures than permanent deprivation of custody but that Y.M. was uncooperative.
Reviewing the totality of the evidence, excluding any evidence that even might be considered improperly admitted hearsay evidence, I would conclude that the trial court's determination that Y.M. was "unable to discharge [her] responsibilities to and for the child[ren]" and that her "conduct and condition" was unlikely to change in the near future, see § 26-18-7(a), Ala.Code 1975, is supported by clear and convincing evidence.[4] A.H., K.H., and D.M. deserve the opportunity to have stability and continuity in their lives, see § 12-18-2, Ala.Code 1975. Competent evidence clearly and convincingly supported the trial court's order that it was in their best interest to terminate Y.M.'s parental rights. Nothing before this Court indicates that this determination was clearly and palpably wrong.
Because the admission of the improper evidence was harmless error, I believe that requiring the trial court to conduct another hearing is not only a waste of judicial resources, but it does not promote the welfare and stability of the children  the purpose of the Child Protection Act. Therefore, I dissent from this Court's opinion insofar as it refuses to conduct a harmless-error analysis.
BROWN, J., concurs.
NOTES
[1] The court files contained four court reports submitted by DHR caseworkers, as well as psychological evaluations of the children, and reports from family-violence shelter personnel. They also contained summaries of conversations DHR caseworkers had had with individuals involved in the children's cases.
[2] Section 26-18-8, Ala.Code 1975, provides:

"If the court determines that the parents of a child are incapable to act as parents and terminates their parental rights, it may:
"(1) Transfer the permanent legal custody of the child to the [Department of Human Resources] or to any public or private licensed child-placing agency able and willing to assume the care and maintenance of the child, with or without an order to proceed with plans for the adoptive placement of the child. A court order which terminates parental rights and awards permanent custody to the Department of Human Resources or to a licensed child-placing agency shall mean that the said department or said licensed child-placing agency shall have authority to make permanent plans for the child, including the authority to place for adoption and consent to adoption.
"(2) Transfer the permanent legal custody of the child to a relative or other individual who, after study by the [Department of Human Resources], is found to be able to properly receive and care for the child."
[3] We note that the Iowa Legislature in Iowa Code § 232.96 (1985), provided that during a termination-of-parental-rights hearing documentary evidence is admissible "notwithstanding any objection to hearsay statements contained in it provided it is relevant and material and provided its probative value substantially outweighs the danger of unfair prejudice to the child's parent, guardian, or custodian."
[4] Additionally, we note that Y.M. admitted that her parental rights to her first child, T.W., were terminated. This evidence establishes an additional ground for termination. See § 26-18-7(a)(8), Ala.Code 1975.