MOORE, Judge,
concurring in part and concurring in the result.
I fully concur in the main opinion’s reasoning and its conclusion that the record contains clear and convincing evidence that the mother is unable or unwilling to discharge her parental responsibilities to and for the children. I concur in the result as to that portion of the main opinion upholding the juvenile court’s judgment insofar as it finds that awarding custody to the maternal grandparents was not a viable alternative to the termination of the mother’s parental rights. However, I write specially to explain why I do not believe the current procedure used in juvenile courts to determine the viability of relative placement complies with the applicable statutes.

Is it Appropriate to Decide the Viability of Alternative Custodial Arrangements in the Adjudicatory Proceeding?

By statute, if it is in the best interests of the child, see Ala.Code 1975, § 12-15-71, a juvenile court may, as an alternative to termination of parental rights, Ex parte J.R., 896 So.2d 416 (Ala.2004), place custody of a dependent child with a “fit and willing” relative, see Ala.Code 1975, § 12-15 — 62(c), who, “after study by the Department of Human Resources, is found by the court to be qualified to receive and care for the child.” Ala.Code 1975, § 12-15-71(a)(3)c.
In Ex parte Beasley, 564 So.2d 950 (Ala. 1990), the supreme court stated:
“The two-prong test that a court must apply in a parental rights termination case brought by a custodial parent consists of the following: First, the court must find that there are grounds for the termination of parental rights, including, but not limited to, those specifically set forth in § 26-18-7. Second, after the court has found that there exist grounds to order the termination of parental rights, the court must inquire as to whether all viable alternatives to a termination of parental rights have been considered. (As earlier discussed, if a nonparent, including the State, is the petitioner, then such a petitioner must meet the further threshold proof of dependency.)
“Once the court has complied with this two-prong test — that is, once it has determined that the petitioner has met the statutory burden of proof and that, having considered and rejected other alternatives, a termination of parental rights *69 is in the best interest of the child — it can order the termination of parental rights.”
564 So.2d at 954-55. This excerpt seems to require juvenile courts to consider the question whether a dependent child should be placed in the custody of a relative after finding that grounds for termination exist, but before entering a judgment terminating parental rights. Routinely, therefore, juvenile courts have been deciding both prongs of the Beasley test in the same proceeding and subject to the same standard of proof — i.e., “clear and convincing evidence, competent, material, and relevant in nature” — see Ala.Code 1975, §§ 12 — 15—65(f) & 26-18-7(a); see also Ex parte State Dep’t of Human Res., 890 So.2d 114, 118 (Ala.2004) (holding that juvenile court may only consider admissible evidence at termination-of-parental-rights hearing).
Putting aside the fact that the statement in Beasley regarding the procedure to be followed in termination-of-parental-rights cases does not appear to be supported by any statutory language in existence at the time it was decided,[5] it is clear that, as the law stands today, Beasley is no longer accurate. When the legislature amended the Alabama Juvenile Justice Act (“the AJJA”), Ala.Code 1975, § 12-15-1 et seq., in 1998 to comply with the Adoption and Safe Families Act (“the ASFA”), 42 U.S.C. § 671 and § 675, it mandated that juvenile courts hold a permanency hearing to determine a child’s disposition within 12 months of the date the child first entered foster care. See Aa.Code 1975, § 12-15-62(c). In a permanency hearing, the juvenile court is to “determine” which of several custodial arrangements[6] — return to the parent, referral for termination of parental rights and adoption, or placement with a relative or other legal custodian[7] — “shall be” the permanency plan. Id. The purpose of requiring the 12-month permanency hearing is to comply with the policy behind the ASFA to ensure “that children are provided a permanent home as early as possible.”[8] Kurtis A. Kemper, Annotation, Construction and Application by State Cowrts of the Federal Adoption and Safe Families Act and Its Implementing State Statutes, 10 A.L.R.6th 178, 193 (2006).
Based on the plain language of § 12-15-62(c), a juvenile court must, in a perma *70 nency hearing, determine the issues of whether a “fit and willing” relative — i.e., someone who is “qualified to receive and care for the child,” § 12-15-71(a)(3)c.— exists and whether placement with that relative serves the best interests of the child. Otherwise, the juvenile court could not make a determination as to whether relative placement should be the permanency plan for the child as required under § 12-15-62(c). Hence, the AJJA now expressly states that the determination of the viability of relative placement should take place in a proceeding separate from the hearing to determine whether grounds for termination of parental rights exist.[9]
Section 12-15-62(c) specifically requires a juvenile court to hold at least one permanency hearing within 12 months of when the child enters foster care; however, nothing in the law prohibits a juvenile court from holding more than one permanency hearing.[10] Thus, if, after the original permanency hearing, an interested party asserts that a material change of circumstances has occurred and that the permanency plan in effect is no longer in the best interests of the child, a juvenile court may conduct another permanency hearing for the purposes of reviewing the permanency plan and, if appropriate, modifying it. For example, if an interested party asserts on the eve of the termination hearing that placement with a relative has become a viable alternative due to intervening circumstances occurring since the last permanency hearing, the juvenile court may order another permanency hearing to immediately precede the hearing on the termination of parental rights. Upon proper notice to the parties, the juvenile court may bifurcate the trial by deciding, first, in the dependency action, the viability of relative placement, i.e., whether the relative is “fit and willing” and “qualified to receive and care for the child” and whether such placement would serve the child’s best interests, and then, if still necessary, deciding, second, in the termination action, whether grounds for termination exist. However, under no circumstances does § 12-15-62(c) authorize a juvenile court to determine the question of the viability of relative placement during the adjudicatory phase, which is dedicated solely to determining whether grounds for termination exist.

What Evidentiary Standards Apply in Permanency Hearings?

In deciding which of the several custodial alternatives should be adopted as the permanency plan, a juvenile court should not be limited to admissible evidence. Alabama Code 1975, § 12-15-65(h), states, in pertinent part:
“In disposition hearings all relevant and material evidence helpful in determining the questions presented, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value, even though not competent in a hearing on the petition.”
In Ex parte State Department of Human Resources, 890 So.2d 114 (Ala.2004), the *71 supreme court concluded that hearings to terminate parental rights are divided into two phases — -a fact-finding, or adjudicatory, stage and a dispositional stage. 890 So.2d at 116 (citing Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). At the adjudicatory stage, the juvenile court
“determines ‘from clear and convincing evidence, competent, material, and relevant in nature, that the parents are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct is unlikely to change in the foreseeable future.’ § 26-18-7(a), Ala.Code 1975.”
890 So.2d at 116. Accordingly, the juvenile court may only accept and consider admissible evidence relevant to the issues relating to the alleged grounds for termination. 890 So.2d at 117.
On the other hand, the questions of which of several dispositional options serves the best interests of the child and which of those options should be adopted as the permanency plan do not involve any determination as to the unfitness of the parent or the dependency of the child.[11] It is only at a dispositional hearing, see Annotation, swpra (noting that the requirement of a 12-month “permanency hearing” in the ASFA replaces the requirement of an 18-month “dispositional hearing” in prior federal law), that, by statute, a juvenile court may consider all material and probative evidence, even if that evidence would be incompetent in the adjudicatory phase. See, e.g., In re Billy W., 387 Md. 405, 875 A.2d 734 (2005); and In re M.J.G., 168 N.C.App. 638, 608 S.E.2d 813 (2005).
The AJJA and the Child Protection Act (“the CPA”), Ala.Code 1975, § 26-18-1 et seq., both specifically state that DHR must prepare and submit to the juvenile court a “study” relating to the qualifications of the relative “to receive and care for the child.” See Ala.Code 1975, §§ 12-15-71(a)(3)c. & 26-18-8.[12] Typically, home studies contain voluminous inadmissible information pertaining to the relative’s family history, criminal background, income, mental and physical condition, past and present child-rearing abilities, drug and alcohol use, relationship with the child, and other similar topics. By mandating that juvenile courts receive and consider those reports, the legislature has clarified that a hearing to determine the viability of placing a child with a relative is a dispositional hearing under § 12-15-65(f).
Because DHR has the burden of initiating investigations and proving the unsuitability of prospective custodians, see Ex parte J.R., 896 So.2d at 428 (quoting D.S.S. v. Clay County Dep’t of Human Res., 755 So.2d 584, 591 (Ala.Civ.App.1999)), at a permanency hearing, DHR would bear the burden of proving that a prospective relative custodian is not fit or willing to receive and care for the child or that it would not be in the best interests of the child to place him or her with the relative. However, DHR would not have *72 to carry that burden by clear and convincing evidence.
In adjudicatory proceedings to determine dependency and whether grounds for termination of parental rights exist, the applicable statutes specifically require proof by clear and convincing evidence. See Ala.Code 1975, §§ 12-16-65® & 26-18-7. In Santosky v. Kramer, supra, the Supreme Court held that, as a matter of due process, states may only find a parent unfit for the purpose of terminating parental rights based on at least clear and convincing evidence. However, no Alabama statute requires clear and convincing evidence in a dispositional hearing aimed at determining whether placement with a relative, or some other placement option, is viable and in the best interests of the child. Likewise, the constitutional right to due process does not require clear and convincing evidence at a dispositional hearing in which the state is not deciding the fitness of the parents, but is actually considering whether it should forgo terminating parental rights in favor of another disposition that serves the best interests of the child. See, e.g. In re D.T, 212 Ill.2d 847, 818 N.E.2d 1214, 289 Ill.Dec. 11 (2004).
Current Alabama caselaw requires a juvenile court to assess the question of viable alternatives based on the clear-and-con-vineing-evidence standard. See, e.g. Ex parte T.V, 971 So.2d 1 (Ala.2007). The application of this standard arose directly from the fusing of the two prongs of the Beasley test into one proceeding. Properly separating the determination as to whether grounds for termination exist from the determination as to what disposition is in the best interests of the child clearly reveals the error of applying a clear-and-convincing-evidence standard to the viable-alternatives issue.
By following appropriate procedure, as outlined above, the juvenile courts will comply with both Beasley and the ASF A. The juvenile courts will still explore all viable alternatives before making a termination-of-parental-rights determination, as Beasley requires, but they will simply do so in a bifurcated manner that expedites the disposition of the dependent child in compliance with the ASFA.

Did the Juvenile Court Err in Excluding Awarding Custody to the Maternal Grandparents as a Viable Alternative?

Upon my first consideration of this case, I concluded that DHR had failed to adequately investigate the maternal grandparents and that DHR had failed to present sufficient evidence to prove the maternal grandparents’ unsuitability to receive and care for the children.[13] The oral testimony presented at the hearing revealed nothing about the maternal grandparents to suggest their unsuitability to receive and care for the children. However, upon more thorough consideration, I am convinced that DHR presented sufficient evidence through court reports and other documents submitted to the juvenile court to prove that the maternal grandfather had abused the mother when she was a teenager and that the maternal grandparents had neglected the children while they were un *73 der their care in 2002 and 2003. Although most of that evidence may not have been admissible within our rules of evidence, under the views I have expressed above, the juvenile court could have properly considered the content of those documents in deciding the viability of placing the children with the maternal grandparents. Alternatively, because the mother failed to object to the admission of those documents, the juvenile court could have considered those documents when concluding that clear and convincing evidence proved that placement with the maternal grandparents was not a viable alternative. See, e.g., Ex parte Williamson, 907 So.2d 407 (Ala.2004).
Although I concur in the main opinion’s conclusion that the judgment of the juvenile court should be affirmed, I note that, had the juvenile court followed the statutory procedure set out above, the juvenile court would have decided the viability of placing J.B. with the maternal grandparents in late 2004 and would have decided that issue in regard to K.T. in August 2005. See Ala.Code 1975, § 12-15-62(c) (establishing circumstances that commence 12-month period to hold permanency hearing). Instead, the juvenile court did not adjudicate the viability of placing the children with the maternal grandparents until March 7, 2007. In my opinion, that delay violates the letter and the purpose of the law. With that said, the juvenile court cannot be placed in error for merely acting in accordance with our present caselaw.

. By its plain language, Ala.Code 1975, § 26-18-7, limits an adjudicatory hearing to consideration of whether grounds for termination exist based on a review of evidence supporting the factors set out in that statute and other relevant evidence. Whether a dependent child may be placed with a relative is irrelevant to the determination of whether the parent is unwilling and unable to properly care for the child or whether the parent's conduct or condition that renders him or her unfit is likely to change in the foreseeable future. Hence, the statute does not refer to relative placement as an alternative to termination of parental rights as a factor to be considered at the adjudicatory hearing.

. The applicable statute allows the juvenile court to order DHR to make reasonable efforts to place the child for adoption or with a legal custodian while concurrently making reasonable efforts to reunite the child with the parent. See Ala.Code 1975, § 12-15-65(n).

. Alabama Code 1975, § 12-15-62(c), provides, in part:
“The permanency hearing shall determine whether the plan will include placement in another planned permanent living arrangement in cases where the department has documented to the court a compelling reason for determining that it would not be in the best interests of the child to return home, be referred for termination of parental rights, be placed for adoption, or be placed with a fit and willing relative, or with a legal custodian."

. See Ala.Code 1975, § 12-15-65(m), which is virtually identical to 42 U.S.C.A. § 671(a)(15)(C), a part of the ASFA.

. Alabama Code 1975, § 26-18-8, which was enacted in 1984, authorizes the juvenile court to transfer custody of the child to a qualified relative following a judgment terminating parental rights, but it does not describe the procedure for determining the qualifications of the relative. Construing § 26-18-8 together with § 12-15-62(c), it appears that the legislature now requires that that determination be made in a permanency hearing.

. In fact, 42 U.S.C. § 675(5)(C), upon which Ala.Code 1975, § 12 — 15—62(c)., is based, specifically requires additional permanency hearings at least every 12 months after the first 12-month permanency hearing if the child continues in foster care.

. Alabama Code 1975, § 12-15-65(1), establishes that hearings to decide the dependency of a child also are adjudicatory proceedings. That section provides, in pertinent part:
“If the court finds from clear and convincing evidence, competent, material, and relevant in nature, that the child is dependent ..., the court may proceed immediately, in the absence of objection showing good cause or at a postponed hearing, to make proper disposition of the case."

. In Wallace v. Pollard, 532 So.2d 632 (Ala.Civ.App.1988), this court held that DHR is not required to perform a formal home study, but DHR often does prepare such studies.

. Also, at one point, the juvenile court appeared to indicate that it could not consider the maternal grandparents as a placement alternative because they had not filed a custody petition. That understanding is erroneous because DHR has the burden of investigating the suitability of relatives regardless of whether they have filed a custody petition. See Ex pane J.R, supra. However, any error the juvenile court may have committed in this regard did not affect the outcome because the evidence supported its final determination that awarding custody to the maternal grandparents was not a viable alternative. See Rule 45, Ala. R.App. P. (stating that a judgment will not be reversed based on harmless error).