THOMAS, Judge.
 

 D.L.L. (“the child”) was born on December 10, 2007, to unmarried parents, M.M. (“the mother”) and D.C.L. On March 6, 2008, the Marion County Department of Human Resources (“DHR”)
 
 [1]
 
 filed a petition to terminate the mother’s parental rights to the child. The petition named D.C.L. as the child’s father and requested that the juvenile court appoint an attorney to represent him. At a hearing on May 2, 2008, the mother consented to a termination of her parental rights. On May 28, 2008, D.C.L. filed a “Motion for Adjudication of Paternity,” alleging, among other things, the following;
 

 “3. [The child] was born out of wedlock on 12/10/2007.
 

 “4. [The child] is in the temporary custody of Marion County DHR.
 

 “5. [The] Court has not terminated the rights of the mother or [D.C.L.] “6. The DHR shall establish a putative father registry which shall record the names, Social Security number, date of birth, and address of any person adjudicated by a court of this state to be the father of a child born out of wedlock. § 26-10C-l(a)(l).
 

 “7. The clerk of the court which determines a man to be the father of a child born out of wedlock shall immediately notify [DHR] of the determination of paternity. § 26-10C-l(b). “8. [D.C.L.] failed to register within 30 days of the birth of the child with the Putative Father Registry maintained by DHR and might lose rights to contest permanent placement by adoption in this action under § 26-10C-l(i).
 

 “9. DHR has notice of [D.C.L.’s] paternity. DHR moved for, and [D.C.L.] submitted to, genetic testing which proves that he is the father; DHR has the test results which have been submitted to the Court.
 

 “10. DHR has admitted that ‘[D.C.L.’s] paternity has been established.’ (See attached Court Report dated 1/15/2008).
 

 
 *508
 
 “11. [D.C.L.] has been ordered by the Court to pay child support and is in compliance.
 

 “12. [D.C.L.] has established a relationship with the child by regularly visiting the child at DHR each Friday as permitted.
 

 “13. [D.C.L.], although still seeking adequate housing, is in substantial compliance with the I.S.P. [individualized service plan].
 

 “Wherefore, premises considered, D.C.L. moves this Court to formally adjudicate his paternity and order the Clerk of this Court to notify DHR to add his name to the Putative Father Registry.”
 

 On June 11, 2008, the juvenile court entered a judgment terminating the mother’s parental rights to the child. The judgment noted that D.C.L., the “biological father of the child,” had been present with counsel at a hearing on May 2, 2008, at which the mother, with advice of counsel, had executed a valid consent to termination of her parental rights. The June 11, 2008, judgment recites that the juvenile court determined by clear and convincing evidence that the child was dependent; that DHR had made reasonable efforts to prevent or eliminate the need for removal of the child from its home; that DHR had made reasonable efforts to preserve or reunify the family; that the mother was unable or unwilling to discharge her responsibilities to and for the child; that the conduct or condition of the mother was such as to render her unable to properly care for the child; that such conduct or condition was unlikely to change in the foreseeable future; that there were no viable relative resources for the child; that the juvenile court had considered other alternatives to termination of parental rights and had concluded that there were no less drastic measures that would better serve the best interests of the child than awarding DHR permanent custody of the child. The juvenile court’s judgment concluded:
 

 “Upon consideration of the foregoing, it is ordered, adjudged and decreed by the Court as follows:
 

 “A. The Permanent Custody Petition of the Marion County [DHR] is hereby granted.
 

 “B. Permanent custody and control of [the child] is hereby granted to the Alabama [DHR] and said department is granted the full power to proceed with permanent plans for the child.
 

 “C.
 
 Any and all rights of
 
 [M.M.], mother of the child,
 
 relatives or any persons in and to the custody of the child are terminated.
 

 “D. The Alabama [DHR] shall have the right to place the child for adoption with full power to consent to said adoption and upon entering a final decree of adoption by a court of competent jurisdiction the custody of the Alabama [DHR] shall cease; otherwise to remain in full force and effect.”
 

 (Emphasis added.)
 

 On June 18, 2008, the juvenile court entered a “supplemental order” that, the court stated, “relate[d] back to the Court’s termination-of-parental-rights order [rendered] on the 4th day of June 2008 [and entered on June 11, 2008].” The supplemental order states:
 

 “It is ordered, adjudged and decreed by the Court as follows:
 

 “A. The Motion for Adjudication of Paternity filed on behalf of the biological father, [D.C.L.], is denied.
 

 “B. [D.C.L.] failed to comply with the Putative Father Registry [Act], Ala. Code § 26-10C-1.”
 

 On June 18, D.C.L. filed both a post-judgment motion and a notice of appeal.
 
 *509
 
 In his postjudgment motion, D.C.L. argued that the juvenile court’s finding that no viable relative resources existed was premature because D.C.L. himself was a potential relative resource and because the court had not heard any evidence pertaining to relative resources. D.C.L. also argued that the juvenile court’s finding with respect to DHR’s having made reasonable efforts to preserve and reunify the family was premature because the court had not heard any evidence with respect to whether D.C.L. would have been a suitable custodial placement for the child. Finally, D.C.L. pointed out that the juvenile court had not ruled that he was unable or unwilling to discharge his responsibilities to and for the child; therefore, D.C.L. requested that the juvenile court “grant him custody or a hearing to determine whether the best interests of the child would be served [by] granting him custody.” The juvenile court denied D.C.L.’s postjudgment motion on June 23, 2008.
 

 D.C.L.’s notice of appeal indicates that the judgment from which he is appealing is a termination-of-parental-rights judgment. Unless the juvenile court’s June 11, 2008, judgment also terminated D.C.L.’s parental rights, however, D.C.L. has no standing to attack the judgment terminating the mother’s parental rights.
 
 See B.H. v. Marion County Dep’t of Human Res.,
 
 998 So.2d 475 (Ala.Civ.App.2008) (holding that child’s maternal great-aunt lacked standing to appeal from judgment terminating mother’s parental rights);
 
 D.M. v. Walker County Dep’t of Human Res.,
 
 919 So.2d 1197, 1205-06 (Ala.Civ.App.2005) (holding that an aunt seeking custody of a dependent child could not assert the rights of the parents, whose rights were terminated, on appeal from the denial of her custody petition).
 

 Although DHR takes the position that the June 11, 2008, judgment operated as a termination of D.C.L.’s parental rights, we are clear to the conclusion that the June 11, 2008, judgment did
 
 not
 
 terminate D.C.L.’s parental rights. Notwithstanding the confusing language in Part C. of the judgment purporting to terminate “[a]ny and all rights of ... relatives or any persons in and to the custody of the child,” the judgment could not have terminated D.C.L.’s parental rights because (1) neither DHR nor any other entity had petitioned to terminate D.C.L.’s parental rights and (2) the juvenile court made no findings with respect to grounds for terminating D.C.L.’s parental rights. Accordingly, to the extent that D.C.L. purports to appeal from a June 11, 2008, judgment on the basis that that judgment terminated his parental rights, the appeal is a nullity because that judgment did not terminate D.C.L.’s rights.
 

 We pretermit discussion of whether D.C.L. could properly appeal from the juvenile court’s June 23, 2008, order denying his postjudgment motion seeking “custody [of the child] or a hearing to determine whether the best interests of the child would be served [by] granting [D.C.L.] custody,” because we conclude that D.C.L. could properly appeal from the juvenile court’s June 18, 2008 “supplemental order” that denied his “Motion for Adjudication of Paternity.”
 

 In denying D.C.L.’s “Motion for Adjudication of Paternity,” the juvenile court stated that D.C.L. had failed to comply with the Putative Father Registry Act. The June 18, 2008, supplemental order was a final judgment because it was a “terminal decision,”
 
 see Horton v. Horton,
 
 822 So.2d 431, 433 (Ala.Civ.App.2001), that left nothing further to be resolved with respect to D.C.L.’s request for a formal paternity adjudication.
 

 
 *510
 
 We hold that the juvenile court erred in denying D.C.L.’s motion to adjudicate paternity based on the rationale that he had failed to comply with the Putative Father Registry Act. The Putative Father Registry Act applies in
 
 adoption
 
 proceedings,
 
 see
 
 § 26-10A-7(a)(5), Ala.Code 1975, and the failure to comply with its provisions does not constitute a ground either for terminating a parent’s parental rights,
 
 see
 
 § 26-18-7, Ala.Code 1975, or for refusing to decide a paternity issue under the Uniform Parentage Act,
 
 see
 
 § 26-17-4(2), Ala.Code 1975.
 

 The record before us does not include a transcript of any of the proceedings before the juvenile court. Nevertheless, it is apparent from DHR’s petition to terminate the mother’s rights, from portions of the court report submitted by DHR, and from the allegations of D.C.L.’s pleadings that were uncontested in the juvenile court and unchallenged by DHR on appeal that D.C.L. is the child’s presumed father. “A man is presumed to be the natural father of a child if ... [wjhile the child is under the age of majority, he receives the child into his home or otherwise openly holds out the child as his natural child.” § 26-17-5(a)(4), Ala.Code 1975.
 

 Recently, in
 
 J.L.P. v. L.A.M.,
 
 [Ms. 2070578, Oct. 31, 2008] — So.3d - (Ala.Civ.App.2008), this court pointed out a distinction between the rights afforded to “presumed fathers” and “putative fathers” under the Alabama Adoption Code, § 26-10A-1 et seq., Ala. Code 1975:
 

 “Under the Alabama Adoption Code, a ‘presumed father’ of a child who has never married or attempted to marry that child’s mother is afforded an
 
 unqualified
 
 right to object to a proposed adoption of that child, regardless of the child’s actual paternity, if ‘[h]e received the adoptee into his home and openly held out the adoptee as his own child.’ Ala.Code 1975, § 26-10A-7(a)(3)d.
 

 “In contrast, a ‘putative father’ who is made known to the court considering the adoption is merely given the right to object to an adoption ‘provided he complies with Section 26-10C-1,’ i.e., the statute governing the putative-father registry.”
 

 — So.3d at-. In
 
 J.L.P.,
 
 we held that “the necessity of the consent of a ‘presumed father,’ in contrast to that of a ‘putative father’ who merely alleges or is reputed to be the father of the proposed adoptee, is
 
 not
 
 conditioned upon compliance with the [Putative Father Registry] Act.” — So.3d at-.
 

 The record before us suggests that D.C.L.’s paternity of the child was established early in the underlying proceedings by genetic testing. It indicates that D.C.L.’s paternity was acknowledged by DHR and made the basis for child-support and visitation orders as well as an individualized service plan for D.C.L. “No duty of support arises from a mere presumption of paternity; ‘paternity must be established before a court determines whether child support is owed.’
 
 Ex parte State of California,
 
 669 So.2d 884, 885 (Ala.1995).”
 
 State ex rel. T.L.K. v. T.K.,
 
 723 So.2d 69, 71 (Ala.Civ.App.1998). Under the circumstances, we hold that there has already been an implicit, if not an explicit, adjudication of D.C.L.’s paternity of the child. In order to remove any doubt, however, we reverse that portion of the juvenile court’s June 11, 2008, judgment designated as a “supplemental order” and remand the case; we instruct the juvenile court to formally adjudicate D.C.L.’s paternity of the child if it has not already done so and to report its determination to DHR pursuant to § 26-10C-l(a)(l), Ala.Code 1975.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 
 *511
 
 THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
 

 BRYAN, J., concurs in the result, without writing.
 

 [1]
 

 . The trial court's orders refer to both the Marion County Department of Human Resources and the Alabama Department of Human Resources. “The county departments of human resources serve as agents of the State Department of Human Resources; the State Department is empowered to designate the county as its agent and to assist the counties in their various duties when necessary. See § 38-6-2, Ala. Code 1975; Admin. Rules 660-1 —2—.01 (g) and 660-1-2.02.”
 
 State Dep't of Human Res. v. Estate of Harris,
 
 857 So.2d 818, 819 n. 1 (Ala.Civ.App.2002). The Marion County Department of Human Resources instigated the proceedings in the trial court and is designated as the appellee; therefore, except where indicated in the portions of the trial court’s orders quoted
 
 infra,
 
 references in this opinion to “DHR” shall mean the Marion County Department of Human Resources.