PER CURIAM.
 

 T.G. (“the mother”) appeals from judgments of the Houston Juvenile Court terminating her parental rights to each of her children, N.N.G., T.T.G., and Q.Q.G. (“the children”).
 

 The juvenile court entered its judgments terminating the mother’s parental rights as to the children after an ore tenus hearing on petitions to terminate her parental rights filed by the Houston County Department of Human Resources (“DHR”). The evidence adduced at the hearing tended to show the following. The mother was sentenced to prison in 2000 after pleading
 
 *1148
 
 guilty to five drug-related charges. She was released on parole, but she returned to prison in 2003 on other charges. She was not in prison at the time of the April 2008 termination hearing; however, her parole will not end until 2024. On the day of the termination hearing, the mother tested positive for the use of cocaine and marijuana. She admitted that she had not paid court-ordered restitution, fines, or court costs. Additionally, the mother was in arrears as to her court-ordered child-support obligation. She said that she did not have the money to support her children.
 

 At the time of the trial, the children ranged in age from 14 years old to 10 years old. The eldest child has attempted suicide. None of the children had lived with the mother for the past 10 years. Since her release from prison, the mother had lived in Jefferson County, while the children lived in Houston County. The mother had never consistently visited the children despite DHR’s efforts to pay for bus fare or to otherwise arrange visits. The mother had not had an overnight visit with the children since April 2007. DHR ended overnight visitation as well as unsupervised visitation when it learned that the mother had purchased a bottle of Pine-Sol brand cleaning fluid for the eldest child to “huff,” or inhale, as a recreational drug. The mother testified that the child had only been “sniffing” the fluid and that it was not serious. Also, the mother did not engage in regular telephone contact with the children. She had not spoken to them in the month leading up to the trial.
 

 Margaret Riley, a social worker with DHR, testified that the mother had not taken advantage of many of the opportunities that DHR had offered in an effort to rehabilitate her so that she could be reunited with the children. For example, she did not increase her number of visits when the offer was made to do so, and she did not make the trip from Birmingham to Houston County to visit the children until the termination petitions were filed. Riley also testified that the mother had never contacted DHR to check on the children’s status or well-being. The children did not express a desire to reunite with the mother.
 

 DHR investigated possible alternatives to termination of the mother’s parental rights. None of the mother’s relatives were appropriate candidates for taking the children; none of the known relatives ever asked to see the children. The identities of the children’s fathers are not known; thus, no paternal relative resources were available.
 

 On appeal, the mother contends that the juvenile court erred in not dismissing the petitions to terminate her parental rights because, she says, DHR filed the petitions outside what she characterizes as a “limitations” period. Specifically, the mother asserts that § 26-18-5, Ala.Code 1975,
 
 [1]
 
 establishes a statutory limitation period for filing a termination petition. We disagree.
 

 The title of § 26-18-5 is “Who may file petition.” The statute reads as follows:
 

 “(a) A petition may be filed by the Department of Human Resources, any public or private licensed child-placing agency or parent, with permission of the court, or any interested party.
 

 “(b) In the case of a child who has been in foster care under the responsibility of the department for 15 of the most recent 22 months, or, if a child has been abandoned or the parent has com
 
 *1149
 
 mitted murder of another child of that parent, committed voluntary manslaughter of another child of that parent, or has aided, abetted, attempted, conspired, or solicited to commit such a murder or such a voluntary manslaughter, or has committed a felony assault that has resulted in serious bodily injury, as defined in Section 26-18-7, to the child or to another child of the parent, the department shall file a petition to terminate the parental rights of the parents of the child, or if the petition has been filed by another party, seek to be joined as a party to the petition, and, concurrently, to identify, recruit, process, and approve a qualified family for adoption unless one of the following occurs:
 

 “(1) The child is being cared for by a relative.
 

 “(2) The department has documented in the case plan, which shall be available for court review, a compelling reason for determining that filing a petition would not be in the best interests of the child.
 

 “(3) The department has not provided to the family of the child, consistent with the time period in the department’s case plan, such services as the department deems necessary for the safe return of the child to the child’s home, if reasonable efforts are required to be made with respect to the child.”
 

 We will not read into § 26-18-5 language the legislature could easily have included had it chosen to do so, but did not.
 
 Ex parte Emerald Mtn. Expy. Bridge,
 
 856 So.2d 834, 840 (Ala.2003);
 
 Noonan v. East-West Beltline, Inc.,
 
 487 So.2d 237, 239 (Ala.1986) (“It is not proper for a court to read into the statute something which the legislature did not include although it could have easily done so.”). If the legislature had intended § 26-18-5 to operate as a statute of limitations, it would have included language setting forth deadlines for filing termination petitions in the statute.
 

 The mother asserts that, in setting forth the circumstances in which a termination petition must be filed, the use of the word “shall” in § 26-18-5 makes filing a petition mandatory in the 15th month a child has been in foster care of the most recent 22 months. Therefore, she argues, § 26-18-5 establishes a limitation period during which DHR must file a termination petition.
 

 “ ‘The intent of the Legislature is the polestar of statutory construction.’
 
 Siegelman v. Alabama Ass’n of Sch. Bds.,
 
 819 So.2d 568, 579 (Ala.2001) (citing
 
 Richardson v. PSB Armor, Inc.,
 
 682 So.2d 438, 440 (Ala.1996);
 
 Jones v. Conradi,
 
 673 So.2d 389, 394 (Ala.1995); and
 
 Ex parte Jordan,
 
 592 So.2d 579, 581 (Ala.1992)). We are mindful that ‘the Legislature will not be presumed to have done a futile thing in enacting a statute; there is a presumption that the Legislature intended a just and reasonable construction and did not enact a statute that has no practical meaning.’
 
 Weathers v. City of Oxford,
 
 895 So.2d 305, 309 (Ala.Civ.App.2004) (citing
 
 Ex parte Watley,
 
 708 So.2d 890 (Ala.1997), and
 
 Ex parte Meeks,
 
 682 So.2d 423 (Ala.1996)).”
 

 Glass v. Anniston City Bd. of Educ.,
 
 957 So.2d 1143, 1147 (Ala.Civ.App.2006). Additionally, “‘[a] literal interpretation will not be adopted, when it would defeat the purposes of a statute, if any other reasonable construction can be given to the words.’”
 
 Limestone County Water & Sewer Auth. v. City of Athens,
 
 896 So.2d 531, 537 (Ala.Civ.App.2004) (quoting
 
 Harrington v. State,
 
 200 Ala. 480, 482, 76 So. 422, 424 (1917)). “[T]he law is a reasonable master, and it should be so construed in the light of common sense in ascertain
 
 *1150
 
 ing the legislative intent.”
 
 Stith Coal Co. v. Sanford,
 
 192 Ala. 601, 606-07, 68 So. 990, 992 (1915).
 

 We conclude that § 26-18-5 does not establish a firm deadline beyond which a petition for termination of parental rights cannot be filed. Similarly, § 26-18-5(b), Ala.Code 1975, does not necessarily establish a “starting point” for DHR to file a petition to terminate parental rights. The starting point is not simply those conditions set out in § 26-18-5(b), but, as always, is triggered by the best interests of the child.
 
 See J.C. v. State Dep’t of Human Res.,
 
 986 So.2d 1172, 1191-94 (Ala.Civ.App.2007) (holding that paramount consideration in termination-of-parental-rights proceeding is best interests of the child). If DHR has sufficient evidence indicating that filing a petition to terminate parental rights is in the best interests of the child, it should file a petition to terminate parental rights regardless of whether the circumstances set out in § 26-18-5(b) are present.
 

 DHR may file a termination petition whenever it determines that the best interests of the child would be served thereby. Even in cases not covered by § 26-18-5(b), DHR may have sufficient reason to file a petition to terminate parental rights before the 15th month of foster care, such as when DHR establishes that further reasonable efforts at reuniting a child with the family would be futile and that it would be in the child’s best interests to expedite adoption.
 
 See generally M.A.J. v. S.F.,
 
 994 So.2d 280, 291-92 (Ala.Civ.App.2008) (holding that DHR properly ended reunification efforts after eight months when previous reunification efforts had failed and the record indicated that further efforts would be unavailing). That is not to say the petition would be granted, but nothing in § 26-18-5(b) prevents DHR from filing a petition to terminate parental rights before the 15th month of the child’s stay in foster care.
 

 Moreover, once a child in the legal custody of DHR has been in foster care for 15 out of the most recent 22 months, § 26-18 — 5(b)
 
 requires
 
 DHR to either file the petition or establish that a statutory exception to the mandatory filing requirement exists.
 
 See In re Clifford M.,
 
 261 Neb. 862, 880, 626 N.W.2d 549, 563 (2001) (recognizing that a Nebraska statute requires that state’s juvenile courts to hold “exception” hearing within 30 days of 15th month child is in foster care). Section 26-18-5(b) states that DHR “shall” file a termination petition when a child in its custody has been residing in foster care for 15 of the most recent 22 months.
 

 “The word ‘shall’ is clear and unambiguous and is imperative and mandatory.
 
 Tuscaloosa County Comm’n v. Deputy Sheriffs’ Ass’n of Tuscaloosa [County,
 
 589 So.2d 687 (Ala.1991) ];
 
 Taylor v. Cox,
 
 710 So.2d 406 (Ala.1998) .... The word ‘shall’ has been defined as follows:
 

 “ ‘As used in statutes, contracts, or the like, this word is generally imperative or mandatory. In common or ordinary parlance, and in its ordinary signification, the term “shall” is a word of command, and one which has always or which must be given a compulsory meaning; as denoting obligation. The word in ordinary usage means “must” and is inconsistent with a concept of discretion.’
 

 “Black’s Law Dictionary
 
 1375 (6th ed. [1990]).”
 

 Ex parte Prudential Ins. Co. of America,
 
 721 So.2d 1135, 1138 (Ala.1998).
 

 Considering the plain language employed, we construe § 26 — 18—5(b) as mandating that DHR file a petition for the termination of parental rights when a child in its legal custody has been in foster care
 
 *1151
 
 for 15 of the most recent 22 months, unless a statutory exception applies, but as not precluding DHR from filing a termination petition under other circumstances not covered expressly by § 26-18-5(b) when the best interests of the child would be served thereby. Considering further the history and purpose of § 26-18-5(b),
 
 see H.H. v. Baldwin County Dep’t of Human Res.,
 
 989 So.2d 1094, 1108 (Ala.Civ.App.2007) (main opinion of Moore, J., on return to remand noting that § 26-18-5(b) was enacted to comply with the federal Adoption and Safe Families Act, 42 U.S.C. § 670 et seq., as a means of shortening foster-care placement), it should not be construed as limiting the right of DHR to file a later petition or as depriving the juvenile court of the jurisdiction to consider that petition. The Adoption and Safe Families Act, 42 U.S.C. § 670 et seq., provides that federal funds may be withheld from a state that fails to comply with the deadlines set out in 42 U.S.C. § 675(5)(E).
 
 See
 
 42 U.S.C. §§ 671 and 674. The possibility of the loss of needed federal funds should be sufficient incentive to motivate DHR to fulfill its statutory duty under § 26-18-5(b); we need not engraft a limitations provision onto the statute in order to further induce DHR to file termination petitions when required.
 

 The mother also contends that the juvenile court erred in determining that there was no reasonable or viable alternative to terminating her parental rights. Specifically, the mother opines that, based upon the testimony given at the termination hearing, the only viable alternatives to termination that DHR considered were her relatives, none of whom were willing or able to take the children. However, she asserts, a viable alternative to terminating her parental rights would be to have the children remain in foster care. The mother also raises two additional issues that are so inextricably intertwined with her position regarding the viability of foster care that separate consideration of them would be redundant: (a) that DHR failed to exhaust reasonable efforts to rehabilitate her before terminating her parental rights, and (2) that the juvenile court failed to take into account evidence of her current conditions when ordering termination of her parental rights as to each of the children.
 

 Juvenile courts are to use a two-pronged test to determine whether to terminate parental rights: (1) clear and convincing evidence must support a finding that the child is dependent; and (2) all viable alternatives to a termination of parental rights must properly be considered and rejected.
 
 See Ex parte Beasley,
 
 564 So.2d 950, 954 (Ala.1990), and
 
 B.M. v. State,
 
 895 So.2d 319, 331 (Ala.Civ.App.2004). The evidence presented at the hearing in this matter showed that the mother had not lived with the children since 1998 — 10 years before the termination hearing. Upon her release from prison, the mother made the decision to live in Jefferson County even though her children had been living in Houston County. She has failed to provide a home for the children or to financially support them. She does not regularly visit the children, and, until the petitions were filed seeking termination of her parental rights, she failed to avail herself of DHR’s offer to provide her with bus tickets to Houston County so that she could visit the children. The mother does not try to speak to the children regularly by telephone. Although DHR offered to allow increased visitation with the children, the mother made no attempt to see the children more frequently. Instead, she would routinely cancel planned visitations. She has never contacted DHR to inquire about the well-being of the children. Although the mother is out of prison and claimed at trial to
 
 *1152
 
 have been drug-free for the three previous years, a drug test administered to her on the day of the hearing revealed that she had recently used marijuana and cocaine.
 

 The mother testified that she has lived in the same house for three years, that she has been drug-free for three years, that she had completed parenting classes, that she had had a positive home study, that she has held a job for a year, that she would be willing to move to Houston County, and that she had seen her children “as late as March 2008.” She points to those statements as proof that she has made strides that,' she apparently believes, mandate a determination that termination of her parental rights was premature.
 

 We conclude that the juvenile court could properly have determined, as it did, that the children are dependent. The evidence belies the mother’s contention that she is drug-free; further, she has not taken an interest in the children’s day-to-day lives and she has not shown a bona fide interest in taking on any parental duties or responsibilities while the children have been in foster care. Despite her contention that her current condition shows that she is making strides, the mother’s actions indicate a lack of effort in trying to adjust her circumstances to meet the needs of her children. It appears that the mother wants to simultaneously maintain her lifestyle while retaining her parental rights even as the children are reared in foster care until their majority.
 

 DHR is not required to make endless attempts to rehabilitate the mother.
 
 See M.A.J.,
 
 994 So.2d at 292 (“We note that the law speaks in terms of ‘reasonable’ efforts, not unlimited or even maximal efforts.”). The children were under the care and responsibility of DHR in Houston County, while the mother chose to live in Jefferson County, making DHR’s attempts at rehabilitation and reunification difficult. Nonetheless, DHR arranged for Jefferson County social-services personnel to perform a home study as to the mother, and it arranged for a Jefferson County organization to work with the mother and to assist in overnight visitations. Those overnight visitations were discontinued when the mother purchased cleaning fluid for the eldest child to inhale. DHR also fostered reunification by arranging visitation and communication between the mother and the children, offering to buy the mother’s bus tickets so that she could visit the children in Houston County, but its efforts were rebuffed until the termination petitions were filed.
 

 It is true, as the mother contends, that a duty to adduce evidence of current conditions or conduct relating to a parent’s inability or unwillingness to care for his or her children is implicitly required under our law.
 
 See D.O. v. Calhoun County Dep’t of Human Res.,
 
 859 So.2d 439, 444 (Ala.Civ.App.2003). However, in this case, evidence that the mother had lived in the same home for three years and had held a job for one year was outweighed by the evidence of her continued drug use and her lack of effort in attempting to be a parent to the children.
 

 As to the mother’s contention that continued foster care would be a viable alternative to termination of her parental rights, that contention is contrary to established law. In
 
 R.L.B. v. Morgan County Department of Human Resources,
 
 805 So.2d 721, 725 (Ala.Civ.App.2001), this court held that maintaining a child in foster care indefinitely is not a viable alternative to termination of parental rights.
 
 See also R.K. v. State Dep’t of Human Res.,
 
 577 So.2d 466, 469 (Ala.Civ.App.1990) (affirming termination of parental rights when DHR was unable to find a placement for the child with a relative and the parent presented no alternative other than the child’s remaining in a foster home); and
 
 D.P. v. State Dep’t of Human Res.,
 
 571
 
 *1153
 
 So.2d 1140, 1142 (Ala.Civ.App.1990) (affirming termination of parental rights when a parent offered no alternatives other than continued placement in a foster home or return to the home where she resided). Other than her own home, the mother has not proposed any alternatives as to who is able and willing to take custody of the children. As demonstrated above, the mother is not able or willing to care for the children, and she has not made an effort toward taking on her parental responsibilities. The record contains evidence from which a reasonable fact-finder could be clearly convinced that DHR proved grounds for termination and that no other viable alternatives to termination existed.
 
 See N.J. v. Madison County Dep’t of Human Res.,
 
 980 So.2d 997, 999 (Ala.Civ.App.2007) (main opinion of Moore, J.).
 

 For the reasons set forth above, the judgments of the juvenile court terminating the mother’s parental rights as to each of her children are due to be affirmed.
 

 AFFIRMED.
 

 BRYAN, THOMAS, and MOORE, JJ., concur.
 

 THOMPSON, P.J., and PITTMAN, J., concur in the result, without writings.
 

 [1]
 

 . We note that § 26-18-5, Ala.Code 1975, was replaced by § 12-15-317, Ala.Code 1975, effective January
 
 1,
 
 2009.