MOORE, Judge.
T.L.S. (“the mother”) appeals from separate judgments of the Lauderdale Juvenile Court (“the juvenile court”) that terminated her parental rights to M.S. and K.S. (hereinafter referred to collectively as “the children”).

Procedural Background

In May 2009, after a teacher reported to the Lauderdale County Department of Human Resources (“DHR”) that K.S. had visible marks about his head and neck, DHR began investigating the mother for physical abuse. DHR instituted a safety plan at that time pursuant to which the mother’s mother assumed physical custody *434 of the children and DHR began providing parenting services to the mother leading toward her reunification with the children. On August 28, 2009, DHR completed its investigation and “indicated” the mother for physically abusing K.S.[1] On September 14, 2009, D.S. (“the father”) received custody of the children.
While in the custody of the father, M.S. revealed that she had been sexually molested by P.W., her stepfather. Ke.S., the children’s older sister, also disclosed that she had been sexually abused by P.W. K.S. indicated that he had witnessed the sexual abuse of his oldest sister and that D.M., another adult male relative, had sexually abused him. DHR investigated those allegations and filed “indicated” reports against P.W. and D.M. in 2010.[2]
On June 24, 2010, the mother was convicted of violating § 26-15-3, Ala.Code 1975.[3] She received a 36-month prison sentence, which was suspended, and she was placed on probation. Two months later, the father informed DHR that he could no longer provide care for the children because of their emotional and behavioral problems, which, he said, endangered his other two children. At that point, DHR placed the children in separate therapeutic foster-care homes. DHR continued providing services to the mother, but DHR eventually determined that, because the mother had been convicted of child abuse and had not demonstrated an ability to meet the special needs of the children, it would discontinue family-reunification efforts and pursue termination of the mother’s parental rights.
DHR filed petitions to terminate the mother’s parental rights to the children on December 9, 2011. Following a trial on June 8, 2012, the juvenile court entered separate judgments terminating the mother’s parental rights to M.S. and K.S., respectively, on June 19, 2012. The mother appealed to this court on June 29, 2012.[4]

Analysis

The mother first argues that the juvenile court failed to use reasonable efforts to rehabilitate her and to reunite her with the children. DHR counters that, because the mother was convicted of child abuse, the juvenile court had no duty to use reasonable efforts to rehabilitate the mother and to reunite the family.
When a child is removed from the home of the custodial parent and placed in foster care, a juvenile court must make specific findings within 60 days of the removal regarding “whether reasonable efforts have been made to prevent removal of the child or whether reasonable efforts were not required to be made.” § 12-15-312(a)(2), Ala.Code 1975 (emphasis added). Within 12 months of foster-care placement, the juvenile court must document whether *435 reasonable efforts have been made to finalize the existing permanency plan. § 12-15-312(a)(3), Ala.Code 1975. “Reasonable efforts” refers to, among other things, “efforts ... to make it possible for a child to return safely to the home of the child.” § 12-15-312(b), Ala.Code 1975. Reasonable efforts are not required if a parent has subjected a child or a sibling of the child to “aggravating cireumstance[s],” such as torture, and the risk of further abuse or neglect is too high to permit the child to be returned home. § 12-15-312(c)(1), Ala.Code 1975.
In this case, the children were removed from the home of the mother in May, 2009 but they were not placed into foster care until August 2010. Based on the statutory deadlines, the juvenile court had until October 2010 to determine whether reasonable efforts to rehabilitate the mother and to reunite the family were required. If the permanency plan called for family reunification, the juvenile court had until August 2011 to specify whether reasonable efforts had been made to achieve that goal. Thus, any issues as to whether reasonable efforts were required and, if required, whether reasonable efforts to reunite the family had been made, should have already been decided before DHR filed its petitions to terminate the mother’s parental rights. If that had occurred, the doctrines of collateral estoppel or res judicata would have barred the relitigation of those issues. See F.V.O. v. Coffee Cnty. Dep’t of Human Res., [Ms. 2110398, Dec. 7, 2012] — So.3d -(Ala.Civ.App.2012).
The record does not contain any of the orders of the juvenile court entered before December 9, 2011. In its petitions to terminate the mother’s parental rights, DHR averred that it had used reasonable efforts to reunite the family; DHR did not allege that it had been excused from those efforts. During the trial, when the mother introduced evidence tending to question the reasonableness of the efforts to reunite the family, DHR did not object that the issue had already been determined. DHR also did not move the juvenile court to take judicial notice of any of its previous orders. In its final judgments, the juvenile court found that DHR had used “fair and reasonable efforts toward reunification of the minor children] with [their] parents ... and that such efforts had not been successful.” The record indicates that the parties and the juvenile court treated the issues surrounding reasonable efforts as if they had not been previously judicially determined. Because the parties litigated those issues and the juvenile court adjudicated those issues, we find that those issues can be considered in this appeal. See Gatlin v. Joiner, 31 So.3d 126 (Ala.Civ.App.2009).
As noted, DHR did not assert at any point during the trial that it did not have to use reasonable efforts to reunite the family. DHR raises that point for the first time in its brief to this court. An appellate court cannot consider an argument raised for the first time on appeal to reverse a judgment, but it can consider a new argument for affirming the judgment. See Verchot v. General Motors Corp., 812 So.2d 296, 305 (Ala.2001) (quoting Progressive Specialty Ins. Co. v. Hammonds, 551 So.2d 333, 337 (Ala.1989)) (“ ‘We can affirm a judgment on a basis not asserted to the trial court, and we can affirm a judgment if we disagree with the reasoning of the trial court in entering the judgment, as long as the judgment itself is proper.’ ”). That is so because a judgment can be affirmed on any valid legal ground, even one not considered by the trial court. See Ex parte CTB, Inc., 782 So.2d 188, 191 (Ala.2000). Hence, we must consider whether the circumstances dictate that no *436 reasonable efforts were required to be made by DHR pursuant to § 12 — 15—312(c).
At trial, DHR introduced evidence indicating that the mother had been convicted by the Lauderdale Circuit Court of violating § 26-15-3. That conviction served as prima facie evidence that the mother had “torture[d], willfully abuse[d], cruelly beat, or otherwise willfully maltreat[ed]” a child. § 26-15-3; see generally Durham v. Farabee, 481 So.2d 885, 886 (Ala.1985) (“Generally, a person’s convic tion in a criminal case is admissible against him in a civil action to show that he did the act for which he was convicted.”). The parties did not delve into the circumstances giving rise to the mother’s arrest and conviction. The scant evidence in the record indicates that the mother became irate while disciplining K.S. and, as the mother stated, things “got out of control.” Some evidence indicates that the mother whipped K.S. about the head and neck with a leather strap or belt excessively, causing visible welts and scars. Other evidence suggests that the mother also choked K.S. “Torture” is defined as, among other things, “[t]he infliction of intense pain to the body or mind to punish....” Black’s Law Dictionary 1627 (9th ed.2009). We conclude that the record shows, without contradiction, that the mother did not merely use ordinary corporal punishment against K.S. but that she did, in fact, willfully torture K.S.
Under § 12-15-312(c), reasonable efforts are not required when a parent has tortured the child at issue or a sibling of the child at issue and the court also determines that the risk of further abuse or neglect is too high for the child to be returned home safely. See also New Jersey Div. of Youth & Family Servs. v. A.R.G., 361 N.J.Super. 46, 77, 824 A.2d 213, 233 (App.Div.2003) (“We conclude that the term ‘aggravated circumstances’ embodies the concept that the nature of the abuse or neglect must have been so severe or repetitive that to attempt reunification would jeopardize and compromise the safety of the child, and would place the child in a position of an unreasonable risk to be reabused.”). Much of the trial centered on that particular point. DHR introduced evidence tending to prove that the mother lacked sufficient insight, judgment, and control to properly care for the children. The mother introduced conflicting evidence tending to prove that she had overcome her anger-management problem to the point that she could safely parent the children. The juvenile court did not specifically resolve that conflict, but the tenor and effect of its judgments suggests that the juvenile court was clearly convinced that the mother could not safely parent the children and that a return to her home would place the children at an undue risk of abuse or neglect. See A.E.T. v. Limestone Cnty. Dep’t of Human Res., 49 So.3d 1212, 1216 (Ala.Civ.App.2010) (“[W]hen the juvenile court has not made specific factual findings in support of its judgment, we must presume that the juvenile court made those findings necessary to support its judgment, provided that those findings are supported by the evidence.”). Based on that factual determination, and the undisputed evidence indicating that the mother had tortured K.S., we conclude, as a matter of law, that the juvenile court and DHR did not have a duty to use reasonable efforts to rehabilitate the mother and to reunite the family. Hence, we find no merit in the mother’s argument that the juvenile court and DHR failed to use reasonable efforts to reunite her with the children or that the juvenile court and DHR had prematurely ended those efforts.
The mother next argues that the juvenile court erred in changing the permanency plan from family reunification to *437 termination of parental rights in June or July 2011 after the children had been in foster care for less than a year. The decision to modify a permanency plan for children in foster care should be made at a permanency hearing, pursuant to § 12-15-315, Ala.Code 1975. A parent aggrieved by the decision to change the permanency plan from family reunification to adoption by an unidentified resource with a termination of parental rights can appeal that judgment to this court. See F.V.O., supra. The record does not reveal whether the juvenile court followed the correct procedure in changing the permanency plan, so we do not know whether the mother had an opportunity to contest the change and to appeal the judgment making the change. However, we do know that, during the trial on the petitions to terminate the parental rights of the mother, the parties only tangentially referenced the change in the permanency plan in regard to DHR’s decision to terminate reunification efforts with the mother; the parties did not independently litigate the propriety of that change. See McCollum v. Reeves, 521 So.2d 13, 17 (Ala.1987) (holding that when evidence relates to an issue expressly contested by the parties, the same evidence does not support a theory that separate issue not raised in the pleadings had been tried by consent). Because the correctness of the change in the permanency plan was not an issue before the juvenile court in the termination-of-parental-rights trial, we decline to address that issue in this appeal.
The mother next argues that the record does not contain clear and convincing evidence of her current unfitness to parent the children, particularly in regard to K.S. We disagree. The evidence in the record shows that the mother tortured K.S. and that the mother downplayed the severity of her physical abuse. She noted that her parents had routinely beaten her with any nearby objects, and she considered it normal to do likewise to the children. After receiving education on appropriate discipline, the mother continued to defend her punishment of K.S. and attributed the marks on his head and neck solely to the fact that he was fair-skinned. Angel Geiske, who performed a parenting assessment of the mother in May 2011, testified that the mother has “a great deal of societal ideations,” meaning that the mother perceives abusive behavior to be acceptable and that the mother could not overcome those beliefs despite her best attempts. Geiske also testified that when a parent willfully abuses a child it is unlikely that the parent will ever properly parent the child.
Because of their abuse, both children suffer from emotional and behavioral problems. Due to the mother’s cognitive limitations, which were proven by intelligence testing, Geiske testified that the mother would not be a viable resource for ordinary children, much less children with specialized needs. Kimanthi Stewart, an employee of the Children’s Aid Society, also testified that, after working with the mother for three or four months in 2009, she did not foresee family reunification as an achievable goal due, in part, to the mother’s mental-health issues. Those mental-health issues remained unresolved at the time of trial.
Based on the above evidence alone, without considering any responsibility the mother may have had for allowing P.W. to return to the family home after receiving reports that he was sexually abusing her daughters, the juvenile court reasonably could have been clearly convinced that the mother lacked the appropriate protective capacities to properly parent the children. A juvenile court can terminate parental rights if clear and convincing evidence *438 proves that the parent is “unable or unwilling to discharge their responsibilities to and for the child,” § 12-15-319, Ala.Code 1975, including the responsibility for protecting the child from physical or emotional harm. See B.B.T. v. Houston Cnty. Dep’t of Human Res., 89 So.3d 169 (Ala.Civ.App.2011). We find that the juvenile court did not err in finding that the mother lacked the ability to properly parent the children.
The mother next contends that the juvenile court prematurely terminated her parental rights. The mother points out that, at the time of the trial, she had moved into her own apartment, had obtained steady employment, had completed a parenting class, had attended mental-health counseling, and had paid child support. Jessica Riddle, an employee of Youth Villages, testified that, from May to September 2011, the mother had worked harder than any parent she had ever counseled and that the mother had improved her circumstances. Riddle testified that she had terminated her efforts to rehabilitate the mother only upon a change in the permanency plan and that, if she had been given an additional five years, she felt like the mother could have been reunited with the children.
Section 12-15-319 authorizes a juvenile court to terminate a parent’s parental rights if “the conduct or condition of the parent[ ] renders them unable to properly care for the child and ... the conduct or condition is unlikely to change in the foreseeable future.” Conceding, for the purposes of the present argument, that the mother could be completely rehabilitated in five years, that change would not occur “in the foreseeable future.” Concerned parents should rehabilitate as quickly as possible in order to resume custody of their children. The legislature has established that a 12-month period from the time a child enters foster care is “a presumptively reasonable time for a parent to rehabilitate.” M.A.J. v. S.F., 994 So.2d 280, 291 (Ala.Civ.App.2008) (discussing former § 12-15-62(c), Ala.Code 1975, now codified at § 12-15-315(a), Ala.Code 1975). In this case, the mother is asking for a total of almost 75 months to rehabilitate. The juvenile court did not err by terminating the mother’s parental rights despite the possibility that the mother might sufficiently rehabilitate at the end of such a long period. See T.B. v. Cullman Cnty. Dep’t of Human Res., 6 So.3d 1195 (Ala.Civ.App.2008) (affirming judgment terminating parental rights when evidence indicated that it would take as long as three years to rehabilitate parent); cf. S.U. v. Madison Cnty. Dep’t of Human Res., 91 So.3d 716 (Ala.Civ.App.2012) (reversing judgment terminating parental rights when mother would be released from prison within three weeks and could assume care of children so that reunification was reasonably foreseeable at time judgment was entered).
Citing C.M. v. Tuscaloosa County Department of Human Resources, 81 So.3d 391 (Ala.Civ.App.2011), the mother next maintains that the juvenile court erred in terminating her parental rights because the children have no convincing prospects for adoption. In CM., the children suffered from emotional disorders. Because of her own mental disability, the mother in that case could not properly meet the special needs of the children. Nevertheless, the undisputed evidence showed that the children had a significant emotional bond with the mother and that, if they were unable to maintain visitation with her, the children would likely suffer adverse psychological impacts. This court held that, in those circumstances, the law requires juvenile courts
“ ‘to weigh the advantage of [some alternative-placement resource that would al *439 low the child to visit periodically with the unfit parent] against the advantage of termination and placement for adoption with permanent fit parents, and to decide which of these alternatives would be in the child’s best interest.’ ”
81 So.3d at 397 (quoting D.M.P. v. State Dep’t of Human Res., 871 So.2d 77, 95 n. 17 (Ala.Civ.App.2003) (plurality opinion)). Due to the special needs of the children in C.M., it was uncertain whether those children would be adopted. Given the clear evidence that the children would be harmed if they were not allowed to maintain their relationship with the mother, and the lack of evidence regarding their adoption prospects, this court held that the juvenile court had erred in terminating the mother’s parental rights.
In this case, the children suffer from severe emotional and behavioral problems stemming from their abuse. Both children reside in special therapeutic foster homes. Their foster parents have indicated to DHR that they are amenable to providing long-term care for the children, although neither has committed to adoption. In those respects, the children very much resemble the children in CM. because their prospects for adoption are uncertain. However, the lack of an identified adoptive resource does not'neeessarily preclude termination of parental rights. R.B. v. State Dep’t of Human Res., 669 So.2d 187 (Ala.Civ.App.1995). In C.M., this court held only that, in such circumstances, parental rights should not be terminated when preservation of a significant emotional bond with an unfit parent would better serve the interests of the children.
The mother in this case presented some evidence indicating that she shared a strong emotional bond with the children, but other evidence disputed that connection. Specifically, John Ruffin, M.S.’s current therapist, testified that although M.S. cared for and loved the mother, M.S. had rarely even talked about the mother and had not informed him that she wanted to return to the custody of the mother. At times, M.S. had informed other counselors that she did not want to live with the mother and that she was angry and confused by her mother’s refusal to believe that she was being sexually abused. During counseling in 2010, K.S. stated that he did not want to live with the mother and that he feared the mother. The record contains almost no evidence regarding KS.’s current feelings toward the mother. No evidence suggested that the children necessarily would be damaged by ending their relationship with the mother. Furthermore, some evidence indicates that the children would regress behaviorally after visiting the mother. Based on that evidence, the juvenile court reasonably could have been clearly convinced that it would not serve the best interests of the children to forgo termination of the mother’s parental rights even in the absence of an identified adoptive resource. Thus, we find C.M. to be distinguishable from this case and conclude that this case falls more clearly within the line of cases holding that, generally speaking, maintaining a child in indefinite foster care is not a viable alternative to termination of parental rights. See T.G. v. Houston Cnty. Dep’t of Human Res., 39 So.3d 1146, 1152-53 (Ala.Civ.App.2009).
Next, the mother maintains that the juvenile court erred in terminating the parental rights of the father, who, the mother contends, was a viable relative resource for the children. We disagree. The evidence shows that the father had married and was sharing a small home with his wife and their two children. After learning of the children’s plight, the father and his wife assumed their custody in the fall of 2009. The children soon exhibited *440 dangerous propensities, sexually acting out and threatening the life or safety of the father’s other children. The father and his wife took the children to counseling throughout 2009 and 2010 in an effort to help them. They also instituted protocols within the home in an attempt to safeguard their own children. However, their efforts proved fruitless as the behavior of the children regressed under their care. The father and his wife decided that they could no longer properly care for the children, and they reached a boarding agreement with DHR in August 2010 to take the children. At trial, the father testified that he lacked the ability and willingness to meet the special needs of the children and that those needs were being met in the children’s current therapeutic foster-care arrangements. After receiving advice from counsel, the father consented to the termination of his parental rights.
Even if the mother had standing to contest the termination of the father’s parental rights, see D.C.L. v. Marion Cnty. Dep’t of Human Res., 9 So.3d 506 (Ala.Civ.App.2008) (one parent lacks standing to appeal the termination of the other parent’s parental rights), we would not conclude that the juvenile court erred in terminating the parental rights of the father and in refusing to return the children to his custody as a viable alternative to terminating the parental rights of the mother. It is clear from the father’s testimony that, despite his and his wife’s best efforts, the father could not meet the'special needs of the children in a safe environment and that the juvenile court had sufficient grounds to terminate his parental rights. Cf. C.C. v. State Dep’t of Human Res., 984 So.2d 447 (Ala.Civ.App.2007) (reversing judgment terminating parental rights of mother by consent when juvenile court failed to adduce evidence of grounds for termination). That same evidence proves that the father could not serve as a viable placement for the children. See J.B. v. Cleburne Cnty. Dep’t of Human Res., 991 So.2d 273, 283 (Ala.Civ.App.2008) (holding that relative is not a viable resource for dependent child if relative cannot meet needs of child during child’s minority). The evidence shows, without dispute, that the father’s decision negatively impacted M.S., who felt rejected by the father; however, the juvenile court reasonably could have been clearly convinced that it served the best interests of M.S. to sever her relationship with the father, given the circumstances.
Finally, the mother contends that K.D., the fiancée of the mother’s brother, testified at the trial that she would be willing to act as a placement for the children. Although K.D. knew of the children’s predicament, she did not come forth until the date of the termination hearing. See M.J.C. v. G.R.W., 69 So.3d 197 (Ala.Civ.App.2011) (holding that relative’s last-minute offers at termination trial to act as custodian was not a viable alternative). Moreover, K.D. has two small children of her own and works two jobs to support her family. K.D. leaves her children with relatives while she works. Although K.D. stated that she would modify her circumstances to help the children, it remains undisputed, that the children in this case have special needs that require constant attention and specialized knowledge. The juvenile court reasonably could have concluded that K.D. lacked the necessary time or skills to properly care for the children and that they would be better off in their current therapeutic foster homes until they could be adopted. See J.B., supra.
In summary, we conclude that the juvenile court and DHR had no duty to use reasonable efforts to reunite the mother with the children, that the juvenile court had clear and convincing evidence before it to terminate the parental rights of the *441 mother, that the juvenile court properly considered all viable alternatives before terminating the parental rights of the mother, and that the juvenile court properly concluded that termination of the mother’s parental rights served the best interests of the children. We, therefore, affirm the juvenile court’s judgments.
2111073 — AFFIRMED.
2111074 — AFFIRMED.
PITTMAN, J., concurs.
THOMPSON, P.J., concurs in the result, with writing.
THOMAS, J., concurs in the result, without writing.

. “Indicated” means "[w]hen credible evidence and professional judgment substantiates that an alleged perpetrator is responsible for child abuse or neglect.” § 26 — 14—8(a)(1), Ala.Code 1975.

. Although the sexual abuse occurred while the children were in the custody of the mother, and although some of the acts of abuse occurred in her home, DHR did not cite the mother for abuse or neglect as a result of the actions of P.W. and D.M., and she was never charged with a crime in connection with the sexual abuse of the children.

. Section 26-15-3, Ala.Code 1975, provides:
“A responsible person, as defined in Section 26-15-2, [Ala.Code 1975,] who shall torture, willfully abuse, cruelly beat, or otherwise willfully maltreat any child under the age of 18 years shall, on conviction, be guilty of a Class C felony.”

. The judgments also terminated the father's parental rights with his consent. The father has not appealed the judgments.