MOORE, Judge, dissenting.
I respectfully dissent.
In a judgment entered on March 11, 2015, the Colbert Juvenile Court ("the juvenile court") terminated the parental rights of A.M. ("the father") to A.C. and F.C. ("the children"). The father appeals.
In my opinion, the dispositive issue in this appeal is whether the juvenile court erred in terminating the parental rights of the father when no adoptive resources have been identified for the children. The main opinion summarily concludes that the juvenile court did not err on this point because " 'the lack of an identified adoptive resource does not necessarily preclude termination of parental rights,' T.L.S. v. Lauderdale Cnty. Dep't of Human Res., 119 So.3d 431, 439 (Ala.Civ.App.2013)." 236 So.3d at 87. Although that statement of the law is accurate, it is also incomplete. In certain circumstances, such as those existing in this case, a juvenile court should not terminate parental rights when adoption of the children remains merely speculative.
The facts pertinent to this issue show that the children have been in the same foster-care arrangement since 2011. D.M., the foster mother, testified that she and her husband would continue to care for the children until an adoptive resource could be identified but that they would not adopt the children. Jamie Young, the children's foster-care worker, confirmed that the Colbert County Department of Human Resources ("DHR") had not located anyone to adopt the children and that the children had not visited with any prospective adoptive parent. Young conceded that, if the parental rights of the father were terminated (as the mother's rights had been in October 2013), DHR could not provide custodial permanency for the children. The guardian ad litem for the children could not recommend termination of the father's parental rights in light of those circumstances.
Despite her admission that the children could not be readily adopted, Young testified that it would still be in the best interests of the children to terminate the parental rights of the father "just from [the father's] instability." The record fully supports DHR's concerns about the father's instability. As the juvenile court found, the father has not been able to sustain suitable housing, consistent employment, and clean drug and alcohol tests as required by the individualized service plans formulated by DHR. In light of the father's history, the juvenile court reasonably could have concluded that the father's employment, housing, and other circumstances would likely persist in the foreseeable future, although the father presented some evidence to suggest otherwise.
It remains, however, that termination of the parental rights of the father would achieve no beneficial purpose for the children. The termination certainly will not serve their permanency interest because the children will remain in foster care with only a contingent plan for their future adoption. On the other hand, the undisputed *89 evidence shows that the children have bonded with the father, that they are excited to see the father, that they refer to the father as "Daddy," that they communicate with him over the telephone almost every day, and that they enjoy visiting with him in person regularly. The foster mother testified that the father loves the children and that they show him a great deal of affection through hugs and kisses. She also testified that the father attends the children's doctor's visits and is as involved with the children as he can be considering their foster-care arrangement. Although the juvenile court correctly noted that no witness directly testified that severing the relationship between the children and the father would emotionally harm the children, the burden of proof was not on the father; rather, the burden rested squarely on DHR to prove that permanent loss of that relationship would benefit the children. See Ex parte Beasley, 564 So.2d 950, 954 (Ala.1990) (holding that party seeking to terminate parental rights must show "that termination is in the child's best interest, in light of the surrounding circumstances").
Before terminating the parental rights of an unwed father who has developed a significant parental relationship with his children, a juvenile court must exhaust all viable alternatives to termination. Cf. C.C. v. L.J., 176 So.3d 208 (Ala.Civ.App.2015) (unwed father who does not have significant parental relationship with child has no due-process rights requiring juvenile court to exhaust viable alternatives before terminating his parental rights). When children have an emotional bond with a parent, and the children face only an uncertain prospect of adoption, a juvenile court should maintain the children in a beneficial foster-care environment while allowing appropriate visitation with the parent if that option is viable. See, e.g., C.M. v. Tuscaloosa Cnty. Dep't of Human Res., 81 So.3d 391 (Ala.Civ.App.2011) ; B.A.M. v. Cullman Cnty. Dep't of Human Res., 150 So.3d 782 (Ala.Civ.App.2014) ; and Montgomery Cnty. Dep't of Human Res. v. N.B., 196 So.3d 1205 (Ala.Civ.App.2015). In this case, it is undisputed that the foster parents can and will properly care for the children and that the foster parents have and can facilitate appropriate visitation between the children and the father with DHR's assistance. Under these circumstances, the existence of that viable alternative prevents termination of the father's parental rights.
Finally, I note that, although the juvenile court determined that the father probably would not be able to exercise custody of the children in the foreseeable future, the circumstances might change and the juvenile court could reach a contrary conclusion based on those changed circumstances. It would not benefit the children to permanently foreclose that opportunity, even if presently deemed unlikely, merely on the remote chance that the children may someday be adopted. If, however, an adoptive resource later emerges, the juvenile court can always consider another petition to terminate the father's parental rights. See L.M. v. Shelby Cnty. Dep't of Human Res., 86 So.3d 377 (Ala.Civ.App.2011). Hence, in this case, it would be most beneficial to the children to maintain the status quo rather than to terminate the parental rights of the father. Because the juvenile court erroneously rejected that viable alternative, its judgment should be reversed.